DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant Tammy Lyn Duncan has appealed a decision of the Summit County Commons Pleas Court, Domestic Relations Division, that denied, in part, her post-decree contempt motion. This Court affirms.
 I {¶ 2} Appellant Tammy Lyn Duncan ("Mother") and Appellee Robert Alan Duncan ("Father") were married in Summit County, Ohio, on August 16, 1990. Two children were born as issue of the marriage, to wit: Katelyn and Cody. Mother filed for divorce on November 21, 2001. The divorce was granted on October 28, 2002. A separation agreement, which the parties had previously entered into, was incorporated into the judgment entry of divorce. Father was ordered to pay Mother child support in the amount of $940.57 per month, plus a monthly processing fee of $18.81.
 {¶ 3} On January 7, 2003, Mother filed a motion for contempt, wherein she moved the trial court to find Father in contempt for his "willful failure to abide by prior orders of this court, to-wit: the payment of child support, the filing of a quit-claim deed, and other violations[.]" Mother requested judgment in the amount of $2,000 for past due child support and "[t]hat the sum of $8,700 representing the agreed payment by [Mother] to [Father] upon the refinancing of the marital residence be held in escrow pending further orders of this court regarding this disbursement as it is anticipated that the disbursement of this sum to the [Father] as it is anticipated that the disbursement of this sum to [Father] would defeat the claim of [Mother] to attach these assets to satisfy [Father's] financial obligations under the terms of the prior orders of this court." After a hearing was held on Mother's motion for contempt, the magistrate granted judgment for Mother in the amount of $628.06 for unpaid child support. The magistrate also found Father in contempt for failing to pay child support on a regular basis and Father was sentenced to ten days in jail; the sentence was suspended on the condition that Father purge his contempt by paying $50 per month as payment on the outstanding arrearage for six months. The magistrate denied Mother's request to find Father in contempt for failing to file a quit-claim deed. The magistrate further ordered the sum of $8,700 to be held in an interest bearing account by Mother's attorney.
 {¶ 4} Father filed objections to the magistrate's decision. Father contended that the magistrate abused its discretion by ordering the marital funds, $8,700, to be held by Mother's attorney, especially in light of the fact that the "evidence presented showed [Father] was unable to pay due to [the] fact that Pennsylvania was restricting, on its own, the amount of child support taken out due to its interpretation of federal/state law." Father further argued that "there was no evidence that proved by preponderance, that there was going to be a future arrears problem, or that [Father] would somehow liquidate improperly [Mother's] assets. Thus, there is no nexus between the leveling of [Father's] monies and the contempt of $628.06[.]" Mother filed a response to Father's objections.
 {¶ 5} On May 8, 2003, the trial court sustained in part and overruled in part the decision of the magistrate. The trial court held that the Father was in contempt for failure to pay child support. The trial court found, however, that the magistrate erred in ordering the marital residence funds ($8,700) placed in escrow. The trial court explained that Mother was "permitted to collect her current judgment for past due support [in the amount of $628.06] from the marital residence funds owed to Father, as Father has a history of non-compliance with this Court's orders and it appears that these funds are Father's only significant asset. * * * However, the Court concludes that the balance of the funds owed to Father should be released to him."
 {¶ 6} Mother has timely appealed, asserting one assignment of error.
 II Assignment of Error
"The trial court erred in reversing the magistrate's ruling that the monies due [mother] from the refinance of the marital residence be held in escrow due to [father's] history of contemptuous behavior and his refusal to make court-ordered payments for child support."
 {¶ 7} In Mother's sole assignment of error, she has argued that the trial court erred when it reversed the magistrate's ruling that the money Mother agreed to pay Father for the sale of the marital estate be placed in escrow because of Father's failure to pay child support in a regular and timely fashion. This Court disagrees.
 {¶ 8} It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berkv. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 9} In the instant matter, Mother has explained that "[t]he [r]ecord * * * is replete with instances of [Father's] failure to make his court-ordered payments. In an attempt to ensure future payments [she filed a motion] seeking * * * an order from the court below `freezing' the disbursement of certain funds representing a property settlement payment from [Mother] to [Father] in the amount of $8,700." In essence, Mother has argued that because Father has proven himself to be incapable of paying child support in a timely manner she "ought [to] be entitled to have any additional funds going to [Father] `escrowed' to guard against future arrearages." Father, on the other hand, has argued that as a result of the changes the Summit County Child Services Enforcement Agency made to the amount of child support he was ordered to pay, there will be no further arrears, collection problems, or contempt charges. Father has further contended that because of the modification in child support there is no need to place the monies owed to him by Mother in an escrow account.
 {¶ 10} The record reveals that at the time the hearing on the motion for contempt was held, Father was in arrears of approximately $628.06, which is equivalent to one month's child support payment. At the hearing, Mother's attorney explained that the reason Father was in arrears was because Father's
"monthly child support payments, if you look, of $959.38 because of his income, they are only taking out approximately $790 every month. * * * As time goes on, as each month goes by, if [Father] does nothing to pay the court ordered support, there is going to be a short fall of about $170 every month.
"It's my understanding that for various federal guideline reasons, he cannot be tagged for more than one-half of his income and this is why we have this short fall."
 {¶ 11} As clearly explained by Mother's own trial counsel, and as argued by Father on appeal, the reason Father was behind in child support payments was because of federal law. Father's trial counsel also explained that Father's "employer in Pennsylvania will not allow more than 50 percent of his wages to be garnished." When asked, however, if Father could make direct payments for child support, trial counsel evaded the question.
 {¶ 12} Based upon the record, this Court finds that the trial court did not abuse its discretion when it declined to place Father's marital funds in an escrow account. The trial court had the authority to reduce the current child support arrearages to a lump-sum judgment and to order Father to pay the judgment out of the marital funds. Davis v. Davis
(1983), 12 Ohio App.3d 38, 40 (holding that it is well within the power of the court to reduce arrearages on alimony and child support to a lump sum judgment which is enforceable against a party, the same as any other judgment and that a court does not abuse its discretion in choosing to satisfy a judgment out of the division of marital property); see, also,Goodman v. Goodman (date), 144 Ohio App.3d 367, 374. Once the child support arrearage was reduced to judgment, it appears that the trial court found that there was no need to further punish Father for potential future violations. We find, as did the trial court, that an anticipatory action such as escrowing Father's marital funds was not required, although federal law would continue to cause Father to be approximately $170 in arrears for his child support obligation each month.[1]
Mother's assignment of error lacks merit.
 III {¶ 13} Mother's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
Beth Whitmore for the Court
Baird, P.J., Concurs.
Carr, J., Concurs in Judgment only.
[1] It is not clear from the record which federal statute Father relied on when he claimed that he was prevented by law from paying the full amount of child support each month. This Court believes that the federal law preventing full payment of Father's child support is the Consumer Credit Protection Act, Section 1673(b), Title 15, U.S. Code. Section 1673(b)(2)(B) restricts garnishment for the enforcement of a support order to only sixty percent of the obligor's aggregate disposable earnings where the obligor is not supporting a spouse or dependant who is not subject to the support order. Section 1673(b)(2)(B), Title 15, U.S. Code; In re Prade (1999), 135 Ohio App.3d 424, 429; Carter v. Carter
(Nov. 23, 1994), 2nd Dist. Nos. 14409, 14530 and 14575, 1994 Ohio App. LEXIS 5215, at * 16-17.