GOODMAN, Appellant,

v.

GOODMAN, Appellee.

[Cite as *Goodman v. Goodman* (2001), 144 Ohio App.3d 367.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 99 CO 72.

Decided June 28, 2001.

*Dominic Frank,* for appellant.

*J. Michael Kapp,* for appellee.

---

Vukovich, Presiding Judge.

Plaintiff-appellant Sharon Goodman appeals from the order of the Columbiana County Common Pleas Court, Domestic Relations Division, which awarded a divorce, divided marital property, and established that child support shall be paid to her by defendant-appellee Stephen Goodman. For the following reasons, the

judgment of the trial court is affirmed in part, reversed in part, and the cause is remanded.

## STATEMENT OF FACTS

Appellant filed a complaint for divorce on July 2, 1998. During the pendency of the case, the court ordered appellee to pay appellant temporary child support for the parties' three minor children. At the time, appellee was forty-seven years old and worked for the city of East Liverpool. In his twenty years as a public employee, appellee had contributed over $41,000 to the Public Employees Retirement System ("PERS"). In March 1999, appellee was terminated from his public employment because he was convicted of two felonies regarding sexual contact with minors, one of whom was his daughter. Appellee's three-year sentence was stayed pending his appeal to this court in *State v. Goodman* (Nov. 29, 2000), Columbiana App. No. 99CO24, unreported, 2000 WL 1781576 (affirming the convictions). Due to his termination, he discontinued paying temporary child support and accumulated an arrearage of $3,681 as of the date of the divorce trial.

The matter came on for trial in September 1999, whereupon the court addressed the division-of-property issue. Appellee submitted a list of tools and other items that he claimed were separate property, since they were gifts to him from his father. The court found that many of the listed items were, in fact, nonmarital and awarded them to appellee. Other items on the list were awarded to appellant. As for appellee's PERS contributions, the parties agreed to an offset, whereby appellant disclaimed her property right to the PERS fund, and, in return, appellee disclaimed his property right to the marital residence.

In response to appellee's motion that child support be reduced or eliminated due to his unemployment, the trial court opined that appellee is liable for child support and arrearage regardless of his unemployment and future prison term because commission of a crime is a voluntary act for which relief from child support may not be sought. The court then ordered appellee to pay over $723 per month in child support. As such, appellant asked that appellee's PERS contributions be distributed as a lump sum and secured in a bank account upon which the court could impose a withholding order to ensure future payments of child support while appellee was in prison. Appellee opposed this request, stating that he wished to keep his retirement fund intact, since PERS is a substitute for Social Security. The court denied appellant's request and left the PERS fund intact.

Appellant also asked the court to reduce appellee's child support arrearage to a lump-sum judgment and order appellee to pay the judgment out of assets granted to him in the property division, such as a life insurance policy with a $3,228 cash value and a van worth $1,800. The court denied this request and instead ordered

appellee to pay an extra $10 per week towards his arrearage. Appellant filed the within timely appeal.

The first of appellant's three assignments of error argues:

"The trial court erred and abused its discretion to the prejudice of appellant when the court failed to secure appellee's retirement benefits through the Public Employees Retirement System as an available asset for the support of the minor children."

Appellant states that in order to ensure that she receives child support, the trial court should have ordered appellee to apply to PERS for a lump-sum payment of his contributions and/or direct the contributions to a financial institution from which money could be withheld to pay child support. Thus, the issue at hand is whether a court can force a PERS member who no longer works for the state to apply for a lump-sum distribution of his accumulated PERS contributions in order to create an account from which future child support installments could be withheld.

Pursuant to R.C. 145.40(A), a PERS member who ceases to be a public employee for reasons other than death, retirement, or disability, may apply to receive a lump-sum payment of his accumulated contributions plus interest. In general, the right to PERS funds is not subject to execution, garnishment, attachment, or other process of law. However, R.C. 145.56 provides an exception to this general rule if R.C. 3113.21 provides otherwise.

According to R.C. 3113.21, in an action where child support is ordered, the court shall require the withholding or deduction of income or assets of the obligor in accordance with division (D) and/or issue another type of appropriate order in accordance with division (D)(3) or (4). Pursuant to R.C. 3113.21(D)(1), the court shall issue a wage-withholding order if the obligor "is receiving income from a payor." R.C. 3113.21(D)(1). A payor includes the Public Employees Retirement Board. R.C. 3113.21(P)(9). Income includes governmental retirement benefits, lump-sum payments, and any other payment in money. R.C. 3113.21(Q). Thus, the exception to the rule against courts using process of law to seize PERS funds is applicable where a child support obligor "is *receiving*" retirement benefits or a lump-sum payment. (Emphasis added.) However, this subdivision is inapplicable to the case at bar as appellee is not receiving his PERS money at this time, nor is he receiving a lump-sum payment.

Pursuant to R.C. 3113.21(D)(2), if the obligor has funds on deposit in an account at a financial institution, the court may issue a withholding order to the financial institution. In the case at bar, there is no evidence that appellee has money in a financial institution. Nevertheless, appellant wants to create such an

account by forcing appellee to apply for a lump-sum payment of his PERS contributions and directing the payment to a financial institution.

As aforementioned, R.C. 145.56 permits court withholding of PERS funds only if such is permitted by R.C. 3113.21. R.C. 3113.21 contains language concerning lump-sum payments such as the one appellee would receive if he applied. For instance, a payor who receives a wage-withholding order must notify the Child Support Enforcement Agency ("CSEA") of the obligor's termination of employment and whether the obligor is eligible to receive a lump-sum payment of retirement benefits or other benefits as a result of his termination. R.C. 3113.21(D)(1)(b)(viii), (ix). The payor has time limits within which it must notify CSEA "of any lump sum payments * * * that are to be paid to the obligor," hold payments that are more than $150 for thirty days after the date they "would have otherwise been paid," and, upon order of the court, pay any specified amount of the "lump sum payment" to CSEA. R.C. 3113.21(D)(1)(b)(x).

▬ Under the plain and ordinary language of the above subsections, the court may intercept a lump-sum payment "that is to be made." However, nothing in R.C. 3113.21 allows the court to compel a lump-sum distribution of PERS contributions so that a lump-sum payment "is to be made." As previously stated, unless R.C. 3113.21 provides otherwise, R.C. 145.56 states that PERS rights are not subject to execution, garnishment, attachment, "or other process of law." Notably, a court may not order PERS to distribute a lump-sum payment where the PERS member is not eligible for payment or has not applied for payment. See *Erb v. Erb* (1996), 75 Ohio St.3d 18, 20, 661 N.E.2d 175, 177, fn. 1 (stating that the court cannot order a public retirement system to engage in acts not permitted by the rules of the plan).

The fact that the statute merely provides for interception of a lump-sum payment that is to be paid due to member application and does not provide for court invasion of a PERS-accumulated contribution fund demonstrates that a court may not compel a PERS-member to apply for a lump-sum payment of accumulated contributions. Specifically, the Second Appellate District has stated:

"We note, however, that the new law gives the court power to order the appropriate retirement board to withhold funds only when the obligor is receiving or is to receive benefits, or has received a warrant for refund of his account. Our reading of this language is that *before a court can order withholding of funds, the PERS member must have requested a refund, or be entitled to receive retirement benefits.* The new law does not give the court the power to 'invade' the actual fund. As a member has to request the refund, it appears that monies cannot be withheld until such request is made. *The new law, however, does not provide that a court can compel a party to make such a request.*" (Emphasis added.)

*Baecker v. Baecker* (Nov. 6, 1986), Montgomery App. No. 9810, unreported, at 4, 1986 WL 12623.

Accordingly, the court did not err by refusing to compel appellee to apply for a lump-sum payment and direct that said payment be used to satisfy past and future child support primarily because such an option is not statutorily permitted. To permit appellee to defer the satisfaction of his child support obligation (including support for a child that he molested) is repugnant to this court. If someone has to suffer economically, it is far better to place that burden on the perpetrator of the crime than his innocent children. However, the remedy is to seek a legislative change of the statute as opposed to a judicial imposition of public policy that invades the doctrine of separation of powers. For the foregoing reasons, this assignment of error is overruled.

Appellant's second assignment of error contends:

"The trial court erred and abused its discretion to the prejudice of the appellant when it failed to reduce the child support arrearages owed by appellee to a lump sum judgment and further by rejecting appellant's request for payment of the support arrearage from assets awarded to appellee."

■ If an arrearage exists from a temporary support order then, upon request, the court must reduce the arrearage to judgment or refer to the arrearage within the final divorce decree. *Colom v. Colom* (1979), 58 Ohio St.2d 245, 247, 12 O.O.3d 242, 243, 389 N.E.2d 856, 857–858. Otherwise, the right to the arrearage is lost, as temporary orders merge with the final order. *Id.* In the case at bar, the court did not reduce the $3,681 temporary child support arrearage to a lump-sum judgment. Rather, the court preserved the arrearage obligation by referring to it in the final decree and ordering appellee to pay $10 per week towards the arrearage. Appellant complains that the court abused its discretion by failing to reduce the temporary child support arrearage to a lump-sum judgment and failing to secure her rights to the arrearage by attaching assets awarded to appellee such as a life insurance policy with a cash value of $3,228 and a van worth $1,800.

■ Admittedly, a trial court has discretion to permit a gradual repayment of an arrearage. *Jones v. Jones* (May 13, 1991), Butler App. No. CA90–06–122, unreported, at 2, 1991 WL 81861. See, also, *Snyder v. Snyder* (1985), 27 Ohio App.3d 1, 3, 27 OBR 1, 3–4, 499 N.E.2d 320, 322–323 (holding that the court did not abuse its discretion by ordering that arrearage be repaid at a rate of $35 per week). However, execution cannot be levied on delinquent and unpaid child support until the arrearage is reduced to a lump-sum judgment. *Dunbar v. Dunbar* (1994), 68 Ohio St.3d 369, 370, 627 N.E.2d 532. Therefore, it is also within a trial court's discretion to reduce a child support arrearage to a lump-sum

judgment. *Stevens v. Stevens* (May 21, 1997), Summit App. No. 18057, unreported, 1997 WL 303662. Upon doing so, the court may satisfy that judgment out of the contemporaneous property division. *Davis v. Davis* (1983), 12 Ohio App.3d 38, 40, 12 OBR 125, 465 N.E.2d 917, 919–920. In this way, the court offsets one judgment with another. *Krause v. Krause* (1987), 35 Ohio App.3d 18, 19, 518 N.E.2d 1221, 1222–1223 (stating that well-established equitable principles give the court authority to set off one judgment against another judgment involving the same parties); *Gallo v. Gallo* (Dec. 21, 1990), Lake App. No. 90–L–14–013, unreported, at 7, 1990 WL 212638 (stating that an offset for an arrearage is a reasonable concept that courts should apply where appropriate).

▮▮▮ Because the court has discretion in choosing to preserve an arrearage of temporary child support by reducing it to a lump-sum judgment or ordering it to be paid in gradual installments, we cannot reverse the court's choice absent an abuse of discretion. An abuse of discretion entails a decision by the court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. We find that under the unique circumstances that existed in the case at bar, the court's refusal to reduce the arrearage of temporary child support to a lump-sum judgment was unreasonable.

Specifically, appellant had to support herself and three children on an income of approximately $17,000. Appellee owed appellant $3,681 in temporary child support arrearage. He also owed appellant over $1,500 for marital debt that she incurred. His present child support obligation was calculated to be $723 per month. However, he was unemployed, and the court did not enter a seek-work order. He had recently been convicted of two counts of gross sexual imposition against minors and sentenced to three years in prison. At the time of the court's order, he was out on bail, as the sentence was stayed pending his appeal.

By failing to reduce the arrearage to a lump-sum judgment, appellant was left with no viable opportunity to collect the arrearage owed to her. Allowing gradual repayment is a reasonable option when the obligor is working or his employment future is promising. However, when the obligor is unemployed and preparing for a long prison term, gradual repayment is unrealistic. A life insurance policy with a cash value of $3,228, upon which the court placed no restrictions, was available for setoff at the time of the divorce. We find that it was unreasonable to refuse to reduce the $3,681 arrearage to a lump-sum judgment and partially satisfy that judgment by offsetting the $3,228 cash value of the life insurance policy. We thus reverse the court's order on arrearage and remand for the entry of a lump-sum judgment on the arrearage of temporary child support and a determination of whether the life insurance policy remains an available source for offsetting the judgments.

■ We do not, however, agree with appellant's suggestion that the remainder of the lump-sum judgment, less than $500, should be satisfied by ordering a sale of the vehicle granted to appellee in the divorce that was worth $1,800. It is reasonable to assume that a person is more likely to engage in employment if he or she owns a vehicle. (In fact, a wage withholding order reveals that appellee engaged in employment after the final decree and before this court affirmed his convictions.) Hence, refusing to use the vehicle as a setoff for the arrearage was not unreasonable. Accordingly, this assignment of error is sustained in part and overruled in part.

Appellant's third assignment of error alleges:

"The trial court erred and abused its discretion to the prejudice of appellant when it determined certain personal property located in the marital residence to be separate property and awarded same to appellee."

■ Appellant complains that appellee was awarded many of the items on appellee's list of gifts from his father. Pursuant to R.C. 3105.171(A)(6)(a)(vii), separate property includes gifts made during the marriage that are proven to have been given only to one spouse by clear and convincing evidence. The court found that appellee proved this gift status by clear and convincing evidence as to approximately twenty items, including items such as saws and ladders. The court found that appellee failed to prove gift status by clear and convincing evidence as to other items; these items were then awarded to appellant.

Appellant does not contest that the disputed items were gifts from appellee's father. Appellee's father testified that he gifted the disputed items only to appellee for birthday and Christmas presents. The court apparently believed the father with regards to his intent to give the gifts to his son alone. There is no need to second-guess the court's decision on witness credibility in this case. In fact, appellant basically concedes that the gifts were made to appellee alone.

■ Nonetheless, appellant contends that any separate gift property has "transmuted" into marital property by virtue of the time that the items were located within the marital residence and the allegation that the items were used to benefit the family. However, this argument fails because the doctrine of transmutation has been replaced by the concept of traceability, *i.e.*, the "source of funds" rule. See, *e.g.*, *Frederick v. Frederick* (Mar. 31, 2000), Portage App. No. 98–P–0071, unreported, at 10, 2000 WL 522170; *Young v. Young* (Jan. 22, 1998), Columbiana App. No. 96CO26, unreported, at 4, 1998 WL 30074; *Fincannon v. Fincannon* (Aug. 7, 1997), Noble App. No. 231, unreported, at 2, 1997 WL 467572. Pursuant to R.C. 3105.171(A)(6)(b), the commingling of separate property with other property does not destroy the separate property status as long as the separate property can be traced. As aforementioned, the court found that

appellee sufficiently traced the property on his list to his father, who testified that the gifts were given to appellee alone. Hence, this assignment of error is without merit.

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and the cause is remanded. On remand, the court shall enter a lump-sum judgment for appellant in the amount of the temporary child support arrearage and determine if the life insurance policy awarded to appellee in the divorce remains available to set off against the arrearage.

*Judgment accordingly.*

DeGenaro, J., concurs.

Gene Donofrio, J., concurs separately.

Gene Donofrio, Judge, concurring.

I concur wholeheartedly in the majority opinion filed herein. I would simply add in response to appellant's Assignment of Error No. 1 the following. Although the law is very clear in not permitting a court order of distribution from a PERS account, an order for PERS to notify the court and/or appellant upon a requested voluntary distribution is the only available alternative to satisfy appellant's objectives.