[Cite as *Bailey v. Marrero-Bailey*, 2012-Ohio-894.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| C. SHELTON BAILEY | ) | CASE NO. 10 BE 16 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| TERESA C. MARRERO-BAILEY | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
                             Pleas of Belmont County, Ohio
                             Case No. 08 DR 384

JUDGMENT:                    Affirmed.

APPEARANCES:

For Plaintiff-Appellant:      Atty. Jack J. Kigerl
                             P.O. Box 248
                             157 East Main Street
                             St. Clairsville, Ohio  43950

For Defendant-Appellee:       Atty. John A. Vavra
                             132 West Main Street
                             P.O. Box 430
                             St. Clairsville, Ohio  43950

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

                             Dated:  February 27, 2012

WAITE, P.J.

{¶1} Appellant C. Shelton Bailey appeals the judgment of divorce issued by the Belmont County Court of Common Pleas. Prior to the marriage, Appellant owned and operated a dairy farm which had been in his family for several generations. The division of the farm property is the subject of the instant appeal. The case was heard before a magistrate who decided that the farm was Appellant's separate property. Appellee filed objections to the magistrate's decision, but did not file any transcript or memorandum of law supporting the objections. The trial court disagreed with the magistrate and held that the farm had become marital property due to large amounts of money contributed to the farm by Appellee Teresa C. Marrero-Bailey and due to the large debt associated with the property.

{¶2} Appellant raises three assignments of error. First, Appellant contends that the trial court failed to make an independent assessment of the facts because Appellee did not file a transcript of the magistrate's hearing. The record shows that the judge used a recording of the magistrate's hearing instead of a transcript, and thus, was able to review all of the facts in this case. The second argument is that the trial court should have sustained Appellant's motion to dismiss Appellee's objections due to Appellee's failure to follow various aspects of Civ.R. 53, which governs the filing of objections to a magistrate's decision. Even if Appellee may have made errors in filing and supporting her objections, the trial court retained the authority to review and modify, or even reject, the magistrate's decision, and that is what happened in this case. Finally, Appellant argues that the trial judge improperly relied on the doctrine of transmutation rather than the concept of traceability of property

when it ruled that the farm had been converted to marital property. Appellant is incorrect. The trial court specifically stated that the separate nature of the farm property could not be traced. The burden was on Appellant to prove the separate nature of the property and that it was kept as separate property during the marriage. According to the trial court's interpretation of the facts, Appellant did not meet that burden. Appellant has not established any reversible error in the trial court's judgment, and therefore, the judgment is affirmed.

Case History and Factual Background

{¶3} Appellant and Appellee were married in St. Clairsville, Ohio on June 21, 2004. Appellant filed a complaint for divorce on December 23, 2008. Appellant was sixty-two years old at the time of the divorce. No children were born of that marriage. The divorce hearing was held before a magistrate on September 17, 2009. It is uncontested that prior to the marriage, Appellant was the sole owner of a dairy farm which had been in his family for "a couple of hundred years." (Tr., p. 13.) Appellant had operated the farm nearly all of his life. (Tr., p. 12.) At that time, the farm was subject to two mortgages through Wesbanco Bank. (Tr., p. 19.) After two years of marriage, the parties formed a limited liability company, Bailey Dairy Farm, LLC ("Farm LLC"), at the suggestion of Appellee. (Tr., p. 21.) Appellant conveyed four tracts of property, including the deed for the farm, to the Farm LLC on or about March 21, 2006. He testified that he never intended to make a gift of the property to Appellee. (Tr., p. 23.) Appellant was under the impression that the Farm LLC was formed in order to protect the farm in case something happened, or for liability purposes. (Tr., p. 20.) He also testified that the only reason Appellee was named

fifty-one percent owner of the Farm LLC was due to the fact that her minority status allowed her to get a better rate on a business loan.  (Tr., p. 39.)

{¶4}  The parties gave conflicting testimony about their finances and expenditures.  They are in agreement that a third mortgage was granted to them through Farm Service Credit for $135,000.00, which reduced the equity of the farm.  (Tr., p. 24.)  Appellant testified that he was under the impression that the farm service loan was to be used as start-up money for a number of supplies and businesses that Appellee attempted, but never successfully started.  A list of these enterprises include: an organic farm, a cheese house for the community, a bed and breakfast, and other miscellaneous interests.  (Tr., p. 41.)  Appellant stated that the organic farming venture negatively impacted his dairy business, as the cows deteriorated and were not producing milk due to the organic farming methods.  (Tr., p. 40.)  Additionally, he claimed that the cheese business never got off the ground.  (Tr., p. 41.)  Notably, Appellant gave testimony that Appellee initiated a number of remodeling efforts in order to improve the house and turn it into a viable bed and breakfast. (Tr., p. 42.)  Unfortunately, due to a lack of funding, the repairs were never completed and the house is currently in a state of disarray.  (Tr., p. 45.)  Appellant's sister also offered testimony and photographs regarding the state of the house, and she agreed that the value of the property has "[c]ompletely deteriorated" since Appellee began the improvements.  (Tr., p. 129.)

{¶5}  Appellant contends that he contributed a significant amount of his own money for Appellee's business ventures, for various living and farming expenses, and for insurance and medical bills from Appellee's pregnancy attempts.  Appellant sold

real estate for a total of $80,000.00 in order to pay some of the bills. (Tr., p. 29.) He also sold nearly $90,000.00 in stock and surrendered the value of a life insurance policy for approximately $6,000.00. (Tr., p. 32.) Between the mortgages, the farm service credit, miscellaneous credit cards, debt from medical bills, farming expenses, and investments made into Appellee's failed businesses, Appellant submitted documentation that he is currently $241,655.00 in debt. (Tr., p. 48.)

{¶6} Appellee testified that immediately prior to the marriage, she was a realtor and that she sold real property that netted her $189,185.98 in proceeds. (Tr., p. 136.) She states that she brought that money into the marriage and used it for improvements around the farm and the residence, for medical expenses in an attempt to get pregnant, for a new car, and for other various living and operational expenses. As for the Farm LLC, Appellee testified that her business education led her to suggest to Appellant that the two form a limited liability corporation as a protection against potential lawsuits. (Tr., p. 144.) With regard to the debts incurred by Appellee while attempting to start up a number of businesses, she believes that there were no substantial losses and that any remodeling efforts improved the property. (Tr., p. 165.)

{¶7} Appellant and Appellee disagree as to how the money was spent on remodeling the home. Appellant argues that the money Appellee brought into the marriage was primarily spent on her own personal and miscellaneous costs. Appellant contends that the residence has completely deteriorated due to the numerous unfinished remodeling efforts, yet Appellee believes the efforts improved the property. Regardless of the conflicting testimony, it is clear that substantial debt

accumulated during the marriage. Appellee requested that the entire farm and its contents be sold at auction, with any proceeds to be used to pay off the debts. (Tr., p. 168.) In contrast, Appellant wanted to keep the property and revive the dairy farm operation in order to pay down some of the bills. (Tr., p. 104.) However, Appellant was willing to sell a small portion of the acreage in order to pay off the creditors. (Tr., p. 192.)

{¶8} The magistrate issued its decision on January 25, 2010. The magistrate determined "that the real estate equipment and fixtures known as the Bailey Dairy Farm L.L.C. are traceable as [Appellant's] separate property and as such are awarded to [him]." (1/25/10 Magistrate's Decision, p. 9.) The magistrate decided that neither party would be reimbursed for their contributions, and ordered Appellee to convey her 51% interest in the Farm LLC to Appellant.

{¶9} Appellee filed objections to the magistrate's decision. Three out of the five objections related to the disputed real estate. Appellant filed a motion to dismiss the objections of Appellee because: (1) Appellee never requested a specific finding of fact or conclusions of law from the magistrate; (2) the objections filed were too brief and did not specify the nature of the alleged error; and (3) Appellee failed to file a memorandum of law in support of the objections even after being given a 14-day extension. Additionally, Appellant argued that Appellee never ordered a transcript of the proceedings to support the objections. Appellant's motion to dismiss was overruled by the trial court.

{¶10} The trial court ruled on the objections on April 1, 2010. The judge did not adopt the magistrate's decision, but rather, crafted an independent judgment that

modified some aspects of the magistrate's rulings. The judge found that the farm property could not be traced as separate property and declared it to be marital property. (4/1/10 J.E., p. 5.) The judge agreed with the magistrate that both parties expended massive sums of money to operate and maintain the farm. Despite the large influx of cash, the debt of the farm increased from $150,000 at the time they were married to $241,655 at the time of the divorce. The court determined that the large sums of money contributed by both parties during the marriage had transformed the farm from Appellant's separate property to marital property. As such, the court gave the parties ten months to make a sale of the property or to reach a mutually agreeable alternative. The court directed that the proceeds were to pay off the debts, and any remaining assets would be divided evenly between the parties.

{¶11} Appellant filed a timely appeal from that decision and submits three assignments of error. Appellee has not filed a brief in this appeal. Appellant's first two assignments of error are related and will be treated together.

## ASSIGNMENTS OF ERROR NOS. 1 AND 2

{¶12} "The Trial Court Erred By Failing To Make An Independent Review (*de novo*) Of The Facts Upon Which The Magistrate's Decision Was Based.

{¶13} "The Trial Court Erred In Failing To Sustain The Plaintiff-Appellant's Motion To Dismiss The Objections Of Defendant-Appellee Based Upon Appellee's Failure To Comply With Civil Rule 53, As To The Specificity Of The Objections, Providing Any Supporting Brief Of Memorandum Addressing The Objections, and Failure To File A Transcript Within 30 Days Thereafter."

{¶14} Both of these assignments of error deal with the effect that procedural errors have on the trial court's ability to rule on objections to a magistrate's decision. Appellant contends in his first assignment of error that the trial court judge lacked a reasonable basis to review the facts of the case or sustain Appellee's objections to the magistrate's decision because no transcript of the magistrate's hearing was ever filed. The second assignment of error asserts that Appellant made other procedural errors in filing the objections that should have forced the trial court to overrule the objections. Neither assignment of error is meritorious.

{¶15} Civil Rule 53(D)(4)(d) requires the trial court, on objections to a magistrate's decision, to undertake an independent review of the matter to ascertain whether the magistrate properly determined the factual issues and applied the appropriate law. The objecting party is required to support the objections by filing any necessary portions of the hearing transcript. Failure to file a supporting transcript or other alternative record of the magistrate's hearing is a basis for the trial court to find that the party waived any objections to the magistrate's factual findings. Civ.R. 53(D)(3)(b)(iv).

{¶16} In this case, Appellee failed to order and file a transcript of the testimony offered at the divorce hearing. This could have been used as a reason for the trial court to overrule the objections. It would also have created a procedural bar in this appeal if Appellee had been the party attempting to allege error in the trial court proceedings. Appellee is not asserting any errors in this appeal, though. It is Appellant who filed this appeal and who must establish that the trial court committed reversible error. Our standard of review in cases involving the trial court's adoption,

modification or rejection of a magistrate's decision is whether the trial court abused its discretion. *Spain v. Hubbard*, 7th Dist. No. 02 BA 15, 2003-Ohio-2555, ¶27, citing *State ex rel. Hrelec v. Campbell* (2001), 146 Ohio App.3d 112, 117, 765 N.E.2d 402. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶17}** We cannot find any abuse of discretion in the record with respect to Appellee's failure to file a hearing transcript. Even though the trial court did not have a transcript of the magistrate's hearing, it did review a recording of the magistrate's hearing when it looked at the record of the case. (4/1/10 J.E.) The Ohio Rules of Civil Procedure specifically contemplate that the trial judge may use something other than a hearing transcript to review the record of the hearing: "alternative technology or manner of reviewing the relevant evidence may be considered." Civ.R. 53(D)(3)(b)(iii). Because the trial judge had access to the trial testimony through the recording of the hearing, its review was not hampered by the lack of a transcribed document. Therefore, Appellant's first assignment of error is overruled.

**{¶18}** Appellant alleges that Appellee made other errors during the objections phase of the proceedings. Appellant contends that her objections were not specific enough, were not supported by any legal argument or memorandum of law, and were not supported by reference to any evidence in the record. Civ.R. 53 provides that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Civ.R. 53(D)(3)(b)(ii). It also provides that "[a]n objection to a factual finding * * * shall be supported by a transcript of all the evidence

submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Civ.R. 53(D)(3)(b)(iii).

**{¶19}** The record reflects that the trial court undertook a thorough independent review of the magistrate's decision (including the recording of the magistrate's hearing) and corrected a number of aspects of that decision. A trial court always retains the right to independently review a magistrate's decision, regardless whether any objections are filed: "Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate." Civ.R. 53(D)(4)(b). As we have recently held: "Civ.R. 53(D)(4)(b) allows a trial court to modify a magistrate's decision whether or not objections have been raised regarding the basis for the modification. * * * [T]he rule plainly permits the modification of the magistrate's decision on the basis of the trial court's own review and determination." *Donofrio v. Whitman*, 191 Ohio App.3d 727, 2010-Ohio-6406, 947 N.E.2d 715, ¶24. In this case, the trial court disagreed with the magistrate on a number of issues and ultimately ruled in favor of Appellee with respect to the division of the farm property. In short, the trial court was simply doing its job by independently reviewing the magistrate's decision, and there is no error in that action. The trial judge may venture outside of the objections in reviewing the magistrate's decision and may sua sponte correct the decision based on its own judgment. Id. at ¶23. Accordingly, Appellant's second assignment of error is also without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 3

{¶20} "The Trial Court Erred In Finding The Separate Property Owned By Appellant Prior To The Marriage Had Been Converted To Marital Property Subject To Division Under Section 3105.171, O.R.C., By Applying The Concept Of Transmutation Of Property, Rather Than The Now Accepted Theory Of Traceability Of Property."

{¶21} In Appellant's third assignment of error he alleges that the trial court improperly applied the doctrine of transmutation when it determined that the 1.6 acre homestead tract as well as the farm real estate, equipment and fixtures were marital rather than separate property. The classification of property as marital or separate is one of the fundamental aspects of a divorce proceeding. "In dividing property in divorce proceedings, the trial court is required to classify assets as marital or nonmarital and then award each spouse his or her separate, nonmarital property." *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300.

{¶22} R.C. 3105.171 sets forth the basic rules regarding the classification and division of marital and separate property. Separate property is defined in R.C. 3105.171(A)(6)(a):

{¶23} "(6)(a) 'Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

{¶24} "(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

{¶25} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

{¶26} "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

{¶27} "(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;

{¶28} "(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;

{¶29} "(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;

{¶30} "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

{¶31} Generally, "* * * the holding of title to property by one spouse individually * * * does not determine whether the property is marital property or separate property." R.C. 3105.171(H). Thus, "[t]he party [who] seek[s] to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Peck* at 734, 645 N.E.2d 1300. Otherwise, " 'marital property is presumed to include all property acquired during the marriage or those assets produced or earned as a result of the parties' mutual efforts.' " *Moro v. Moro* (1990), 68 Ohio App.3d 630, 636, 589 N.E.2d 416, quoting *Avis v. Avis* (May 23, 1985), 9th Dist. No. 48832, at *6.

{¶32} Under prior law, property that was commingled between the married couple was considered to be transmuted to marital property. "Transmutation is [the

term] generally used 'to describe the process by which independent or nonmarital property has changed to marital property * * *.'" *Kampf v. Kampf* (May 3, 1991), 11th Dist. No. 90-A-1503. "Numerous appellate districts in Ohio have recognized that separate real property can be transformed by the grantor spouse into marital property by a gratuitous transfer to the grantee spouse of a present interest in the property." *Helton v. Helton* (1996), 114 Ohio App.3d 683, 686, 683 N.E.2d 1157.

{¶33} The application of the transmutation principle to marital property changed somewhat in 1991 with the passage of R.C. 3105.171(A)(6)(b), which allowed property to retain its separate nature if the history of the property could be accurately traced as separate property both before and during the marriage. R.C. 3105.171(A)(6)(b) states: "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." Thus, after 1991, commingled separate property is not transmuted to marital property if the relevant financial and legal history of the property is traceable to show that the separate nature of the property was maintained during the marriage. *Fincannon v. Fincannon* (Aug. 7, 1997), 7th Dist. No. 231. Transmutation still occurs if there is commingling of separate and marital property and the history of the separate property cannot be traced. The starting point for tracing the history of the property is to determine the source of the funds. *Goodman v. Goodman,* (2001), 144 Ohio App.3d 367, 375, 760 N.E.2d 72.

{¶34} It is not entirely clear that the trial court used the doctrine of transmutation in its judgment. The judgment simply concludes that the property was

not traceable as separate property. Unless parties keep accurate and distinct financial records of their contributions to separate property, traceability becomes difficult or impossible. In this case, neither party kept accurate records of either their financial additions to the property or to the money or resources that were taken out of the property. It was unmistakably clear from the record that both parties made substantial contributions to the property after they were married, and both parties were also responsible for the added debt burden placed on the property after the marriage began. However, records containing the exact details of those contributions were not kept. Without such records to specifically detail how the farm property that was brought into the marriage was kept exclusively as separate property, the trial court could not trace the separate nature of the property and correctly ruled that the farm and the 1.6 acre homestead were marital property. Appellant has not shown any error in the trial court's ruling that the separate nature of the property was not traceable. Therefore, we overrule his third assignment of error.

CONCLUSION

{¶35} Appellant has failed to show any abuse of discretion in the trial court's judgment. The court made an independent review of the magistrate's decisions, which included a review of a recording of the magistrate's hearing. Any errors in Appellee's filing of objections to the magistrate's decision had no bearing on the trial judge's ability and duty to independently review the magistrate's decision as provided by Civ.R. 53. Finally, the trial court did not err in finding that the separate farm property that Appellant brought into the marriage was not traceable as separate property once both parties began making substantial contributions to the property.

The record indicates that the parties did not attempt to keep their contributions separate and distinct, and thus, the nature of the property was changed to marital property. All three of Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

Vukovich, J., concurs.

DeGenaro, J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion.

DeGenaro, J., concurring in part and dissenting in part.

**{¶36}** I write separately for two reasons. First, while I concur with my colleagues' disposition of the procedural issues in this case, the interplay between the trial court's discretion and the mandates of Civ.R. 53 merits further analysis. Second, I respectfully dissent from the majority's resolution of the third assignment of error concerning the trial court's division of the marital property.

**{¶37}** This case reveals a glaring tension in Civ.R. 53. Although (D)(3)(b)(ii) provides that a party's objections to a magistrate's decision must be specific and (D)(3)(b)(iii) requires that the party support objections to factual findings with any relevant portions of the hearing transcript, (D)(4)(b) allows the trial court to adopt, reject or modify the magistrate's decision regardless of whether the objecting party follows these procedural mandates. This tension between the rule's procedural requirements and the trial court's broad discretion in reviewing magistrates' decisions is noteworthy here because of the facts of this case.

**{¶38}** A comparison of the facts to a recent case from the Third District, *Tewalt v. Peacock*, 3d Dist. No. 17–10–18, 2011-Ohio-1726, is instructive. In *Tewalt*, the Appellee filed a motion to correct a clerical error in the magistrate's decision, which was actually an attempt to challenge a substantive part of the decision. *Id.* at ¶ 9, 19. Although Appellee did not file a hearing transcript, the trial court obtained a DVD of the hearing. The trial court viewed the DVD in the presence of both parties' counsel, and the Appellant did not object to the court's use of the DVD. The trial court also took live testimony from both parties. *Id.* at ¶ 10. The appellate court found that the motion to correct a clerical error was actually an objection to the magistrate's decision and analyzed whether the trial court erred in considering this objection despite Appellee's failure to file transcripts. *Id.* at ¶ 19-20.

**{¶39}** The Third District began its analysis by noting that Civ.R. 53 allows a trial court to consider "alternative technology" in lieu of a written transcript when ruling upon objections to a magistrate's decision, and the court found that the DVD was an acceptable alternative to a transcript. *Id.* at ¶ 24. (D)(3)(b)(iii) provides that: "*With leave of court*, alternative technology or manner of reviewing the relevant

evidence may be considered." (Emphasis added.) However, the court noted that although the rule requires "leave of court," Appellee had not filed a motion or requested leave for the trial court to consider alternative technology. The appellate court concluded that the trial court's use of the DVD was outside of the procedures of Civ.R. 53, but the rule affords great latitude to a trial court in reviewing a magistrate's decision. Thus, the trial court had discretion to sua sponte obtain alternative technology when reviewing objections to the magistrate's decision. *Id.* at ¶ 25-26.

**{¶40}** Similarly here, the procedure the trial court followed in reviewing the objections to the magistrate's decision was contra to Civ.R. 53. There is no evidence in the record that Appellee requested leave of court to file alternative technology for the court to consider in lieu of a transcript. However, unlike in *Tewalt*, it does not appear that the parties were informed of the trial court's decision to listen to a recording of the hearing nor did the trial court take additional testimony from the parties. In fact, Appellant filed a motion to dismiss the objections due to Appellee's failure to file a transcript and lack of specificity in her objections. Instead of affording Appellant a chance to defend against the objections, the trial court sua sponte obtained the recording of the hearing, denied Appellant's motion to dismiss and ruled on the merits of Appellee's objections in simultaneous entries.

**{¶41}** Furthermore, the use of alternative technology like an audio recording raises considerations about credibility determinations. I understand that the trial court must perform an independent review of the magistrate's decision and consider the credibility of the witnesses. I am mindful that trial judges are the elected judicial officers, and magistrates' decisions are not final judgments until adopted by the trial court. Thus, a compromise was reached in crafting Civ.R. 53, balancing the policy interests to have magistrates assist trial courts in managing their dockets against a less than ideal record from which a trial court can make credibility determinations. However, the fact remains that while the trial court apparently listened to an audio recording of the hearing, the magistrate viewed the parties' testimony and experienced the most complete opportunity to gauge witness credibility. In this case, neither party provided expert testimony or appraisals to show the value of the

property at the beginning and end of the marriage. Instead, the parties provided mostly conflicting testimony regarding the property's value, the reason for creating the LLC, and their contributions to the property during the marriage. Therefore, credibility determinations were critical in this case. The trial court had a less than complete ability to exercise its independent judgment of the parties' credibility upon an audio-only, single dimension record consisting of he said, she said evidence. And the objecting party and trial court deviated from the procedure of Civ.R. 53. As a result, these circumstances reinforce the internal tension of the rule.

{¶42} Accordingly, I agree with the majority's conclusion that the trial court had discretion to rule on the objections to the magistrate's decision despite Appellee's failure to follow the procedural requirements of Civ.R. 53. Notwithstanding this discretion, it must be emphasized that the best practice in most cases is for the trial court and litigants to completely comply with these requirements. *See Tewalt* at fn.2. Appellant was placed at a disadvantage in responding to Appellee's objections for the reasons discussed above. I do not believe the drafters of Civ.R. 53 intended this consequence.

{¶43} Regarding the merits of the third assignment of error, the trial court's determination that the 1.6 acre homestead and the Bailey Dairy Farm, LLC were not traceable as separate property and therefore marital property was a very close issue; thus, I am not prepared to say that the trial court's finding is against the manifest weight of the evidence. As the majority correctly notes, Appellant bore the burden of proof because he sought to have these assets deemed his separate property; the conflicting testimony and lack of financial records from both parties rendered traceability difficult.

{¶44} However, the trial court abused its discretion in dividing the marital property. R.C. 3105.171(C)(1) directs courts to divide marital property equally between the parties, but "[i]f an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In

making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section."

**{¶45}** R.C. 3105.171(F) provides: "In making a division of marital property * * *, the court shall consider all of the following factors:

**{¶46}** "(1) The duration of the marriage;

**{¶47}** "(2) The assets and liabilities of the spouses;

**{¶48}** "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

**{¶49}** "(4) The liquidity of the property to be distributed;

**{¶50}** "(5) The economic desirability of retaining intact an asset or an interest in an asset;

**{¶51}** "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

**{¶52}** "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

**{¶53}** "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

**{¶54}** "(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

**{¶55}** "(10) Any other factor that the court expressly finds to be relevant and equitable."

**{¶56}** A review of the totality of circumstances in this case leads to the conclusion that an equal division of the marital property was inequitable, and thus, the trial court's division of the marital property was an abuse of discretion. Before the parties' four-year marriage, the dairy farm had been in Appellant's family for generations. (Tr., p. 13.) At the time of the divorce, Appellant was 62 years old, and his life's occupation a dairy farmer on his family property. (Tr., p. 12.) The highest level of education he attained was a high school diploma and he had never worked

for anyone besides himself. (Tr., p. 68-69.) He testified that he desired to attempt to continue the dairy farming operation and was willing to assume all of the marital debt. (Tr., 70, 104.) Appellant also testified that currently his only source of income was his Social Security of $580 a month. (Tr., p. 14.)

{¶57} The parties married after Appellee placed an advertisement in a farming publication seeking a husband. Appellee testified that she interviewed 60 men to determine whether they would "qualify" to be her husband and chose Appellant because he met most of her criteria. Her intention was to pool her assets and skills with those of Appellant and most importantly, to have a child. (Tr., p. 146.) Appellee had received two years of college education in business administration but did not obtain a degree or certification. (Tr., p. 182.) She also testified that she currently had no income but received monthly food stamps in the amount of $200. (Tr., p. 162-163.)

{¶58} The trial court's decision was unreasonable considering the unique facts of this case: the short length of the marriage; the fact that the property belonged to Appellant's family for generations; Appellant's willingness to assume all of the marital debt; and that Appellee was seeking assets and to have a child, not a marital union. Thus, the magistrate's decision properly divided the assets and debt equitably; the farm remained in Appellant's family, as it had for generations, and Appellant was also responsible for the large amount of debt incurred during the parties' short marriage.

{¶59} Because the trial court should have ordered an equitable distribution of the dairy farm assets and debts by awarding them to Appellant, I must dissent in part from the majority's opinion and would reverse the trial court's division of the marital property and reinstate the magistrate's decision.