STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ROBERTA A. AKERS | ) | CASE NO. 14 NO 419 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| RAYMOND L. AKERS, JR. | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Noble County, Ohio Case No. 212-0153

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee: Atty. Kent D. Biegler
Tribbie, Scott, Plummer & Padden
P.O. Box 640
139 W. Eighth Street
Cambridge, Ohio 43725-0640

For Defendant-Appellant: Atty. James S. Huggins
Atty. Daniel P. Corcoran
Theisen Brock,
424 Second Street
Marietta, Ohio 45750

JUDGES:

Hon. Cheryl L. Waite
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated: August 17, 2015

WAITE, J.

{¶1} This appeal involves the division of marital assets in a divorce. Appellant Raymond L. Akers, Jr. ("Raymond") and Appellee Roberta A. Akers ("Roberta") purchased a 150-acre parcel of property in 1993. The purchase price was $70,000. Roberta paid $35,000 out of her own separate bank account, and Appellant's parents paid the remainder. At the time of the divorce in 2013 the property was valued at $337,500. The trial court determined that one-half of the value of the property belonged to Appellant's parents. Of the remaining half, the court awarded the entire amount to Roberta because the source of the funds to purchase the land were traced to her own separate property and not to marital property.

{¶2} Appellant presents three arguments under one assignment of error. Appellant contends that even if Roberta paid for the property with separate funds, it transmuted to marital property because he was listed as a cotenant. The doctrine of transmutation of separate property into marital property was largely overruled in Ohio by statute in 1991. R.C. 3105.171(A)(6)(b) states that separate property, even if commingled with marital property, retains its status as separate property if it can be properly traced. The record shows that Roberta used her own separate funds to purchase one-half of the property, and thus, it was separate property.

{¶3} Appellant also argues that Roberta loaned him $17,500 to pay for one-quarter of the property when it was purchased in 1993, and that the portion he paid for with this loan should be treated as his property. The record does not support this argument. Other than some vague testimony from Roberta about wanting to be

repaid for the money she spent on the property, there is no evidence of any loan agreement.

**{¶4}** Appellant finally asserts that the increased value of the property from the time of purchase to the divorce should have been treated as marital property. There is no evidence that marital funds or marital effort were responsible for the increased value of the property. Hence, there is no basis for classifying it as marital property. Appellant's assignment of error is not supported by the record and the judgment of the trial court is affirmed.

## Background of the Case

**{¶5}** The parties were married in 1986. In 1982, prior to the marriage, Roberta was in an automobile accident and received a settlement. Roberta always kept the settlement funds in her own separate account, even during the marriage. (Tr., p. 29.) In 1993, she took $35,000 of that settlement money to purchase a one-half interest in 150 acres in Noble County. The other one-half interest was purchased by Appellant's parents. The deed was recorded in the names of both Appellant and Roberta, and in the name of Appellant's parents.

**{¶6}** On July 13, 2012, Roberta filed a complaint for divorce. Final hearing was held on December 5, 2013. At the hearing, Appellant argued that the 150-acre parcel was marital property. Roberta provided substantial evidence that it was paid for with her own separate property. She produced the bank account, in her name only, from which the funds were taken, and the cashier's check, with a reference only to her name, that was used to pay for the property. (12/5/13 Tr., p. Exh. G.) She

also testified about the automobile accident, the disposition of settlement funds, and the fact that she had always kept those funds separate. (Tr., pp. 29-32.) The trial court ruled that one-half of the 150-acre parcel belonged to Appellant's parents and was not part of the divorce. The other half of this property was awarded solely to Roberta since the source of the funds could be properly traced. The final judgment of divorce was filed on April 15, 2014, and this timely appeal followed.

ASSIGNMENT OF ERROR

The origin of the loan proceeds does not transform the land into separate property.

{¶7} This appeal centers on the court's evaluation of the evidence regarding the classification of separate and marital property in a divorce. The specific property in question is a 150-acre parcel that Roberta and Appellant's parents purchased in 1993. Roberta used funds she received from an automobile accident to pay for her half of the property. The court awarded one-half of the value of this property to Roberta as separate property. Since the remaining half was owned by Appellant's parents, none of it was designated as marital property.

{¶8} For a variety of reasons, Appellant believes that some of the property should have been designated as marital property. As a preliminary matter, Appellant claims that the court's treatment of the 150-acre parcel as part of the division of marital assets was inequitable, and that an equitable standard should be used to award him at least some of the value of the property. Roberta argues that the standard of review of the division of marital property, and the determination as to

whether property is marital or separate property, is not whether it is equitable but whether the court abused its discretion. The parties are both partially correct. As a general rule, we review the trial court's division of marital property for abuse of discretion. *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981). An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). In addition, R.C. 3105.171(C)(1) mandates that a trial court divide marital property equally, or, if an equal division is inequitable, that the court divide the property equitably. *Kestner v. Kestner*, 173 Ohio App.3d 632, 2007-Ohio-6222, 879 N.E.2d 849, ¶10 (7th Dist.). Therefore, equitable considerations do come into play when reviewing the division of marital assets. However, the question under review is not the division of marital property but the classification of separate property, and this is reviewed for abuse of discretion. "[T]he trial court's decision in designating property as a marital asset or separate property is reviewed for abuse of discretion." *Knox v. Knox*, 7th Dist. No. 04 JE 24, 2006-Ohio-1154, ¶47. Ultimately, then, our standard of review of the issue on appeal is whether the court abused its discretion in designating Roberta's interest in the 150-acre parcel of land as separate property.

**{¶9}** R.C. 3105.171 sets forth the basic rules regarding the classification and division of marital and separate property. Separate property is defined in R.C. 3105.171(A)(6)(a):

(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;

(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;

(vi) *Compensation to a spouse for the spouse's personal injury*, except for loss of marital earnings and compensation for expenses paid from marital assets;

(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse. (Emphasis added.)

{¶10} Generally, "[a]ll property acquired by either or both parties during the marriage is presumed to be marital property, regardless of how title is held." *Ruthrauff v. Ruthrauff*, 5th Dist. No. 2009CA00191, 2010-Ohio-887, ¶7. "The party [who] seek[s] to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994).

{¶11} Appellant contends that the 150-acre parcel purchased in 1993 should have been designated as marital property because his name was on the original deed as a joint tenant, and then later as a cotenant. He admits that he did not directly contribute any money to purchase the property in 1993. Although at one time Appellant's argument may have had some validity in Ohio, the fact that his name appeared on the deed is no longer determinative in deciding whether the land was separate property.

{¶12} Prior to 1991, property that was commingled during a marriage was considered to be transmuted to marital property. Transmutation was a term used to describe the transformation of separate or nonmarital property to marital property, normally by deed or by gift. *Kampf v. Kampf*, 11th Dist. No. 90-A-1503, 1991 WL 70785, *4. "Numerous appellate districts in Ohio have recognized that separate real property can be transformed by the grantor spouse into marital property by a gratuitous transfer to the grantee spouse of a present interest in the property." *Helton v. Helton*, 114 Ohio App.3d 683, 686, 683 N.E.2d 1157 (2d Dist.1996).

**{¶13}** The doctrine of transmutation significantly changed in 1991 with the passage of R.C. 3105.171(A)(6)(b). This statute allowed property to retain its separate nature if the history of the property could be accurately traced as separate: "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." Thus, after 1991, commingled separate property is not transmuted to marital property if the relevant financial and legal history of the property is traceable and shows that the separate nature of the property was maintained during the marriage. *Bailey v. Marrero-Bailey*, 7th Dist. No. 10 BE 16, 2012-Ohio-894, ¶33; *Fincannon v. Fincannon*, 7th Dist. No. 231, 1997 WL 467572, *2. Transmutation only occurs if there is commingling of separate and marital property and if the history of the separate property cannot be traced. *Bailey* at ¶33. The starting point for tracing the history of the property is determining the source of the funds. *Goodman v. Goodman*, 144 Ohio App.3d 367, 375, 760 N.E.2d 72 (7th Dist.2001).

**{¶14}** The trial court relied on our previously cited *Fincannon* case in rendering its decision. In *Fincannon*, the husband purchased a residence prior to the marriage, had paid a substantial down payment on it, and paid the mortgage with his own funds. After marriage, he added his wife's name to the deed. The trial court declared it to be marital property, but this was reversed and remanded on appeal so that the court could determine whether the property was traceable as separate property. *Fincannon* is based on the current version of R.C. 3105.171(A)(6)(b).

Appellant contends that *Fincannon* is inapplicable because in that case, the husband owned the property before the marriage, whereas here, the property was purchased during the marriage. R.C. 3105.171(A)(6)(b) makes no distinction between property commingled or acquired before or after marriage. It states that commingling does not destroy the nature of separate property, unless it cannot be traced. Thus, the fact that the 150-acre parcel was purchased after the parties were married is of no consequence, and the trial court properly relied on *Fincannon* to resolve the issue.

**{¶15}** The trial court traced the funds Roberta used to purchase the 150-acre parcel, and it is clear that the funds were separate. Roberta received settlement money in 1982 from a personal injury lawsuit. "Separate property also includes compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets. R.C. 3105.171(A)(6)(a)(iv)." *Gatchel v. Gatchel*, 7th Dist. No. 12 CO 44, 2013-Ohio-5289, ¶29. The money was put into a separate account. Roberta maintained this separate account during the marriage. She used this money to purchase one-half of the property. Appellant's parents purchased the other half. There was no mortgage on the property. It was paid in full when purchased in 1993. Therefore, the evidence supports the trial court's decision that the 150-acre parcel was separate property. This parcel is different from other property acquired during the marriage, such as the marital home. The 150-acre parcel appears to be undeveloped wooded property. The mineral rights to the property were separately divided by stipulation of the parties and were not in dispute during the divorce.

{¶16} Appellant contends that Roberta loaned him the money to pay for a one-quarter share of the property in 1993. He bases this argument on a brief portion of Roberta's testimony at the very end of the trial:

Q [Appellee's Attorney] Roberta when you took monies out of your accounts and bought the pole barn and down payments and that kind of stuff that you've already testified to, was there any agreement ahead of time between you and your husband about how you guys were going to treat that?

A No, except for the money for the property we agreed that we would try to pay it back if we could.

Q Did you agree with him when he took money out of the IRA to put into the business, the restaurant, that he was going to get his money back?

A No, I did not.

* * *

Q [Appellant's Attorney] This is the first time I've heard of, on the rebuttal there, now you said about the 35 thousand you'd try to pay it back. When was that agreement made?

A [Roberta] When we bought it.

Q  So now your position is it could be paid back to you as opposed to you owning it all?

A  Excuse me?

Q  Well, we just now heard this, that it would be okay to pay it back.

A  When we bought the property we were going to try to put the money back but we did not?

Q  Okay.  But that's different than you're saying I own it all now isn't it?

A  No, I'm just saying the money came from my own account.

[Appellee's Attorney]  Okay.

(Tr., pp. 116-118.)

**{¶17}** There is nothing in this testimony that establishes Roberta loaned Appellant money to purchase a one-quarter share, or any share of the property.  It reflects that Roberta was confused by counsel's question, and then she reiterated that the money came from her own account.  Roberta's testimony reveals that she did not intend to make a gift of the property and that she considered it to be her own individual purchase.  At most, Roberta had a hope of repayment but this cannot be interpreted as any type of loan repayment contract.  There are none of the required elements of an enforceable loan contract, such as an offer, acceptance, a meeting of the minds on the terms of the contract, or an exchange of consideration.  "If the minds of the parties have not met, no contract is formed." *McCarthy, Lebit, Crystal &*

*Haiman Co. L.P.A. v. First Union Mgt., Inc.*, 87 Ohio App.3d 613, 620, 622 N.E.2d 1093 (8th Dist.1993).

**{¶18}** Appellant also argues that the increased value of the property from 1993 to the time of the divorce in 2013, an increase of $267,500, should have been declared to be marital property even if the original purchase price was separate property. He cites *Young v. Young*, 7th Dist. 96-CO-26, 1998 WL 30074, in support. In *Young,* the trial court determined that part of the value of a 50-acre farm would be awarded as separate property to Mrs. Young, and that the remainder would be treated as a marital asset. The property was purchased in 1985. The property was paid for partially with a down payment from Mrs. Young, but primarily by a mortgage. Mortgage payments were made using marital funds, and the loan was paid back in full in 1994. The property had initially been purchased for $37,645, but at the time of the divorce had risen substantially in value to $67,500. The only dispute in the appeal was the court's decision to classify $26,200 of the value of the property as Mrs. Young's separate property.

**{¶19}** Appellant is attempting to use *Young* to prove something that was not in dispute by the Youngs: that the property increased in value during the marriage and the increase was marital property. The holding of *Young* is that jointly owned assets traceable to separate property can be designated as separate property, and this is the same principle used by the trial judge in the instant case.

**{¶20}** Appellant is generally correct that if separate property increases in value during the marriage as a result of contributions of marital funds or the efforts of

either spouse, then the increase in value is marital property. It must be pointed out that it is the contributions of either spouse, rather than only the non-owning spouse, that transforms the increase in value to marital property. Prior to 1991, the increase would only be treated as marital property if the spouse with no interest in the property added value (by labor, money or in-kind contributions). The definition of "marital property" in R.C. 3105.171(A)(3)(a)(iii) changed in 1991 to read: "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage". In 1998, the Ohio Supreme Court confirmed that the prior common law rule had changed with the passage of R.C. 3105.171(A)(3)(a)(iii), and that the increase in the value of separate property due to the efforts of either spouse converted the increase to marital property. *Middendorf v. Middendorf,* 82 Ohio St.3d 397, 400, 696 N.E.2d 575 (1998).

{¶21} In the instant appeal, there is no evidence that either party contributed to the increase in value of the property. The record merely indicates that the value at the time of purchase was $70,000, and at the time of divorce was $337,500. There was no mortgage on the property, unlike in *Young*, so that factor does not work in Appellant's favor. Appellant argues that he helped pay property taxes, but property taxes do not increase the value of property. They are simply a burden on the property that must be paid to the state, and if anything, they decrease the value of the property if the taxes are not paid. There is no evidence in this record that the increase in value of the property was due to any marital efforts. Therefore, the trial

court was correct in treating Appellee's share of the property as separate property. Appellant's assignment of error is not persuasive and is overruled.

## Conclusion

**{¶22}** In conclusion, there is no merit to Appellant's collective arguments regarding the trial court's treatment of Appellee's interest in a 150-acre property in Noble County as part of the division of marital property. The record fully supports that Appellee paid for her share of the property with separate assets from a personal injury settlement, that she made no loan to Appellant to pay for any part of the property, and that no marital assets or effort were used to contribute to the increased value of the property from 1993 to 2013. Appellant's sole assignment of error is overruled and the judgment of the trial court is affirmed.

DeGenaro, J., concurs.

Robb, J., concurs.