[Cite as *Yant v. Roebuck*, 2017-Ohio-2591.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

ALIVEA YANT,

    PLAINTIFF-APPELLEE,          CASE NO. 12-16-14

    v.

AARON D. ROEBUCK,            O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Putnam County Common Pleas Court
Juvenile Division
Trial Court No. 20154061

**Judgment Affirmed**

Date of Decision:   May 1, 2017

APPEARANCES:

    *Shannon A. McAlister* **for Appellant**

    *Gregory J. Hermiller* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant Aaron D. Roebuck ("Roebuck") brings this appeal from the September 20, 2016 judgment entry, and subsequent entries, from the Putnam County Common Pleas Court, Juvenile Division, granting Plaintiff-appellee Alivea Yant ("Yant") child support for the parties' minor child, A.Y.

*Relevant Facts and Procedural History*

{¶2} On September 8, 2014, Yant gave birth to A.Y.

{¶3} On November 2, 2015 a Complaint to Determine Father-Child Relationship was filed by the Putnam County Child Support Enforcement Agency on behalf of Yant. The Complaint alleged Roebuck to be the father of A.Y. and requested that he submit to genetic testing.

{¶4} On December 12, 2015 Roebuck filed an Answer to the Complaint. Ultimately, genetic test results were filed in the trial court establishing Roebuck to be the biological father of A.Y. (Doc. 3).

{¶5} The case proceeded to a child support hearing on July 27, 2016, wherein, by agreement of the parties, the Putnam County Child Support Enforcement Agency was excused from the case and Yant moved forward, with separate counsel, on the agency's Complaint. At the hearing, Roebuck consented to a finding of paternity. (Tr. Pg. 4) and testified he had been employed by Radio Hospital but his employment was terminated in November of 2015. (Tr. Pg. 72).

**{¶6}** Yant testified that she voluntarily left her full-time employment as a health care aid and became a full-time student effective January of 2015. (Tr. Pg. 34-36).

**{¶7}** Roebuck's income evidence presented to the trial court revealed that he earned $19,363.93 in 2013, $37,718.59 in 2014, $22,857.53 in 2015 and nothing in 2016. Yant's income evidence revealed that she earned $12,269.00 in 2013, $3,557.00 in 2014, $8,266.00 in 2015 and nothing in 2016. (Plaintiff's Exhibits A-F).

**{¶8}** On September 20, 2016 the trial court filed its decision and judgment entry on child support for A.Y. (Doc. 4). However, the entry did not include a child support worksheet and failed to direct either party to pay child support. Subsequently, a child support worksheet was filed on October 11, 2015. (Doc. 5).

**{¶9}** On October 19, 2016 Roebuck filed his first Notice of Appeal with this Court, which was ultimately dismissed for lack of jurisdiction, due to the failure of the trial court to order either party to pay child support.

**{¶10}** On November 10, 2016, the trial court filed its judgment entry ordering Roebuck to pay Yant child support in the amount of $334.42 per month plus a 2% administration fee.

**{¶11}** It is from these entries, collectively, that Roebuck appeals, asserting the following assignments of error for our review.

**FIRST ASSIGNMENT OF ERROR**

**THE TRIAL COURT COMMITTED AN ERROR BY FAILING TO MAKE SUFFICIENT FINDINGS FOR APPELLANT TO RAISE ASSIGNMENTS OF ERROR.**

**SECOND ASSIGNMENT OF ERROR**

**THE TRIAL COURT COMMITTED AN ERROR OF LAW IN CALCULATING MINIMUM WAGE.**

**THIRD ASSIGNMENT OF ERROR**

**THE TRIAL COURT COMMITTED ERROR AND ABUSED ITS DISCRETION WHEN IT FOUND THE APPELLANT TO BE VOLUNTARILY UNEMPLOYED.**

**FOURTH ASSIGNMENT OF ERROR**

**THE TRIAL COURT COMMITTED ERROR AND ABUSED ITS DISCRETION IN DETERMINING THE APPELLANT'S GROSS INCOME.**

*First and Second Assignments of Error*

**{¶12}** Roebuck's first two assignments of error address the imputation of minimum wage (to Yant) by the trial court. Accordingly, we will address these assignments of error together, starting with Roebuck's second assignment of error first.

**{¶13}** In his second assignment of error, Roebuck argues the trial court committed error in calculating minimum wage. Specifically, Roebuck contends the trial court committed "an error of law" when it imputed minimum wage in the amount of $15,080 to Yant.

*Standard of Review*

**{¶14}** At the outset it appears to us that Roebuck's terminology of "error of law" suggests that the trial court committed plain error in imputing the sum of $15,080 as minimum wage. In *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 1997-Ohio-401, the Supreme Court of Ohio addressed the application of the plain error doctrine in civil matters, stating "[i]n applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice". Thus, "appellate courts must proceed * * * only * * * where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself". *Skydive Columbus Ohio, L.L.C. v. Litter*, 10th Dist. Franklin No. 09AP-563, 2010-Ohio-3325, ¶13, citing *Unifund CCR Partners v. Hall*, 10th Dist. Franklin No. 09AP-37, 2009-Ohio-4215, ¶22, quoting *Goldfuss* at 121. "Indeed, the plain error doctrine implicates errors in the judicial process where the error is clearly apparent on the face of the record and is prejudicial to the appellant". *Skydive Columbus*, citing *Reichert v. Ingersoll*, 18 Ohio St.3d 220 (1985).

**{¶15}** Thus, we reject using plain error as the standard of review as child support decisions are within the discretion of the trial court and will not be disturbed without an abuse of discretion. *Marek v. Marek*, 158 Ohio App.3d 750, 2004-Ohio-

5556, citing *Rock v. Cabral*, 67 Ohio St.3d 108 (1993), syllabus. An abuse of discretion is "more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary or unconscionable". *Marek*, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

**{¶16}** Because the trial court imputed an amount inconsistent with Ohio's prevailing minimum wage, we must now analyze whether the trial court's action amounted to abuse of discretion. In the present matter, Roebuck contends the following language in the trial court's September 20, 2016 entry amounts to error:

> **"imputation of minimum wage pursuant to ORC 3119(C)(11) is appropriate. Accordingly Plaintiff shall have income imputed in the amount of $15080 annually".**

(Doc. 37 Pg. 6).

We note that at the time of the September 20, 2016 entry, the prevailing minimum wage in Ohio was $8.10 an hour, or $16,848 annually based on a 40-hour work week. However, at such time, the Federal minimum wage was $7.25 per hour, or $15,080 annually. Thus, we must determine whether the trial court committed an error by imputing the Federal minimum wage amount as opposed to the Ohio minimum wage.

**{¶17}** In reviewing the record, we find the trial court properly applied R.C. 3119.01(C)(11)(a) when imputing a minimum wage to Yant. In our review of R.C.

3119.01(C)(11)(a)(i)-(xi), we find no restrictions for a trial court to impute income to a parent using minimum wage pursuant to Federal minimum wage standards. Further, Roebuck presents no authority suggesting such use of the Federal minimum wage standard by the trial court is improper. Thus, we find the trial court's use of Federal minimum wage was not an abuse of discretion in this case as it represents an ascertainable and acceptable standard of minimum wage. Accordingly, Roebuck's second assignment of error is overruled.

{¶18} As to the first assignment of error, Roebuck argues that the trial court failed to make specific findings in its determination as to the minimum wage it used. However, the record before us is clear that Roebuck never requested written findings of the trial court pursuant to Civ.R. 52. Civ. R. 52 provides as follows:

> **When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law.**

> **\* \* \***

{¶19} "A party that fails to request findings of fact pursuant to Civ.R. 52 faces an uphill burden of demonstrating that a judgment is against the manifest weight of the evidence". *O'Brien v. O'Brien,* 12th Dist. Butler CA2009-11-289, 2010-Ohio-3258 (2010).

{¶20} Here, because Roebuck failed to request that the trial court make findings of fact and conclusions of law under Civ.R. 52 the trial court was not required to include specific findings of fact to support its imputed income of minimum wage.

{¶21} Accordingly, Roebuck's first assignment of error is overruled.

*Third and Fourth Assignments of Error*

{¶22} In his third and fourth assignments of error, Roebuck claims the trial court committed error and abused its discretion when 1) it found Roebuck to be voluntarily unemployed and 2) in its determination of Roebuck's gross income for child support purposes. Specifically, Roebuck questions the trial court's factual determination finding him voluntarily unemployed and its refusal to impute minimum wage for his 2016 income.

*Standard of Review*

{¶23} Decisions regarding the award of child support are within the discretion of the trial court and will not be disturbed without an abuse of discretion. *Marek*, supra. An abuse of discretion is "more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary or unconscionable". *Marek*, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*R.C. 3119.01(C)(5) and R.C. 3119.01(C)(11)*

R.C. 3119.01(C)(5) provides:

**(5)** **"Income means either of the following:**

    **a)** **For a parent who is employed to full capacity, the gross income of the parent;**

    **b)** **For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.**

R.C. 3119.01(C)(11) defines potential income as follows:

**(11)** **"Potential income" means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:**

    **a)** **Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:**

        **i)** **The parent's prior employment experience;**
        **ii)** **The parent's education;**
        **iii)** **The parent's physical and mental disabilities, if any;**
        **iv)** **The availability of employment in the geographic area in which the parent resides;**
        **v)** **The prevailing wage and salary levels in the geographic area in which the parent resides;**
        **vi)** **The parent's special skills and training;**
        **vii)** **Whether there is evidence that the parent has the ability to earn the imputed income;**
        **viii)** **The age and special needs of the child for whom child support is being calculated under this section;**

> ix) **The parent's increased earning capacity because of experience;**
> x) **The parent's decreased earning capacity because of a felony conviction;**
> xi) **Any other relevant factor.**

> b) **Imputed income * * ***

### *Analysis*

**{¶24}** In considering Roebuck's arguments that the trial court erred in determining he was voluntarily unemployed and by imputing his income, we note that "R.C. 3119.01(C)(11)(a) authorizes a court to impute income to a parent whom the court finds is voluntarily underemployed, for purposes of calculating child support." *Breedlove v. Breedlove*, 4th Dist. Washington No. 08CA10, 2008-Ohio-4887, ¶14. "[W]hether a parent is voluntarily (i.e. intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion that factual determination will not be disturbed on appeal." *Rock*, supra, at 112. The term "abuse of discretion" means more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶25}** In calculating child support, a trial court must determine the annual income of each parent. For an unemployed or underemployed parent, income is the "sum of the gross income of the parent and any potential income of the parent".

R.C. 3119.01(C)(5)(b). R.C. 3119.01(C)(11) provides the definition of "potential income", which is set forth above.

**{¶26}** Before a trial court can impute income to a parent, it must first find that the parent is voluntarily unemployed or underemployed. *McLaughlin v. Kessler*, 12th Dist. Fayette No. CA2011-09-021, 2012-Ohio-3317, ¶13. In deciding if an individual is voluntarily underemployed "[t]he test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned". *Woloch v. Foster*, 98 Ohio App.3d 806, at 811.

**{¶27}** Roebuck contends that the trial court erred and abused its discretion in finding him to be voluntarily unemployed, arguing he was unable to secure new employment despite reasonable efforts. (Tr. Pg. 73-98). We disagree.

**{¶28}** The trial court conducted its review of the required child support statutes as to whether or not Roebuck was voluntarily unemployed and as to his potential income. The trial court found that Roebuck's lack of employment was primarily associated with his voluntary decision to provide care for his two children (from another relationship) in lieu of working full time. When questioned, Roebuck testified as follows in regards to this issue:

Q. (Mr. Hermiller)      Okay.   And tell the Court about your pursuit of employment what all have you done?

A. (Roebuck)     Really what I've been looking for is something that I can work around their schedule, because their child care's expensive.

(Tr. Pg. 72-73).

and

Q. (Mr. Hermiller)      And where all have you applied?

A. I have applied at Sprint.  I have applied at AT&T.  I have applied with actual Verizon, over at Verizon.  I've applied at Best One Tire.  I've applied at, I mean I could go on all day.

Q. And what has been the result of those applications or that process?

A. Typically it's a schedule conflict as to where when [sic] I was with Radio Hospital, I was able to pretty much mold my schedule around my kids because I was the manager.

Q. So when you say there's a schedule conflict, then some of the positions have offered you employment but the hours weren't appropriate?

A. With the pay, probably not.

(Tr. Pg. 73-74).

Pursuant to this evidence regarding Roebuck's decision not to work, the trial court found him voluntarily unemployed by stating:

"While it is admirable that the Defendant chooses to care for two of his children, he cannot be permitted to favor those two over the other because of the nature of the relationship in which they were conceived.  It is clear that the Defendant is prioritizing his ability to

personally care for this first two children over his obligation to support his third. In making this his priority he has established himself as voluntarily unemployed".

(Doc. 37).

{¶29} In our review of the record, we find the trial court reviewed and considered the appropriate statutory factors in determining that Roebuck was voluntarily unemployed. The trial court analyzed Roebuck's employment experience, availability of work in his geographic location, his education as well as his special skills and training to earn the potential income that it imputed. Thus, the trial court did not abuse its discretion in determining Roebuck was voluntarily unemployed as competent and credible evidence exists in the record in support of the same.

{¶30} Roebuck further argues that the evidence introduced at trial does not support the trial court's finding of the gross income it attributed to him. More specifically, Roebuck argues that the trial court erred when it used the average of the years 2013, 2014 and 2015 to calculate his potential income, and disregarded his zero income for 2016.

{¶31} In determining Roebuck's imputed income, the trial court again considered the statutory factors relying upon R.C. 3119.05(H), which provides:

> **"When the court or agency calculates gross income, the court or agency, when appropriate, may average income over a reasonable number of years".**

The trial court chose to use Roebuck's incomes for 2013, 2014 and 2015, but not 2016, stating:

> "The Court disregards his zero income for 2016 (a year for which minimum wage of $15080 would be imputed) because indulging this year would allow him to benefit from his decision to be unemployed."

(Doc. 37). Accordingly, the trial court's child support award was based upon the average of Roebuck's actual income from 2013, 2014 and 2015 to determine his potential income to be $26,646.68[1] which is reasonable considering that Roebuck voluntarily chose not to work in 2016.

**{¶32}** Viewing the evidence as a whole, we are not convinced that the trial court abused its discretion by finding Roebuck voluntarily unemployed. Moreover, we find the imputation of income calculated by the trial court to be appropriate. As such, we overrule Roebuck's third and fourth assignments of error.

**{¶33}** Having found no error prejudicial to the appellant herein in the particular assignments of error, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**

---

[1] The trial court averaged Roebuck's 2013, 2014 and 2015 income as provided in Exhibits D, E and F as follows:

Income for 2013 $19,363.93
Income for 2014 $37,718.59
Income for 2015 $22,857.53
Total           $79,940.05
$79,940.05 ÷ 3 = $26,646.68