[Cite as *Donofrio v. Whitman*, 191 Ohio App.3d 727, 2010-Ohio-6406.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DONOFRIO, | ) | CASE NO. 09 MA 132 |
| | ) | |
| APPELLANT, et al., | ) | |
| | ) | |
| v. | ) | OPINION |
| | ) | |
| WHITMAN, | ) | |
| | ) | |
| APPELLEE, et al. | ) | |

CHARACTER OF PROCEEDINGS:       Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 07 CV 650

JUDGMENT:       Affirmed.

APPEARANCES:

      Samuel G. Amendolara, for appellant.

      Matthew C. Giannini, for appellee.

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

                                 Dated: December 22, 2010

WAITE, J.

{¶ 1} Appellant, James Donofrio, appeals the Mahoning County Court of Common Pleas' modification of the magistrate's decision recommending judgment

against appellee, C.T.W. Development. Donofrio, a leasing consultant, entered into an oral agreement with C.T.W. to provide consulting services for the leasing of commercial space developed by C.T.W. After the termination of Donofrio's services, a dispute arose over the amount of compensation still owed to him. The magistrate awarded damages of $32,000 to Donofrio, $12,000 of which was for work performed from May through August 2005. C.T.W. filed timely objections to the magistrate's decision with the Mahoning County Court of Common Pleas. In reviewing the magistrate's decision, the trial court found that a subsequent agreement had resolved the disputed payment for the May-August period, and based on this conclusion the trial court subtracted $12,000 from the damages award. Donofrio's appeal contests the lower court's elimination of part of the recommended award.

**{¶ 2}** Donofrio asserts that the trial court was unable to modify the magistrate's decision because the reasoning used by the trial judge was not set forth in the objections to the magistrate's decision. Donofrio's contention is without merit. Pursuant to Civ.R. 53(D)(4)(b), a trial court retains the ability to review and modify a magistrate's decision regardless of the content of any objections that have been filed. Even though the objections to the magistrate's decision did not address the trial court's ultimate basis for its modification, the trial court was permitted to employ its own reasoning and analysis in issuing the judgment.

**{¶ 3}** Donofrio further questions the legality of the trial court's modification, first, by arguing that the trial court's modification was against the manifest weight of the evidence. There is no basis to this argument. Donofrio's testimony established that the

dispute over the money owed from May to August 2005 had been resolved, and he also submitted documentary evidence that supported the trial court's damages formulation. On appeal, an appellate court must determine only whether competent, credible evidence exists to support the trial court's decision. It would be difficult to argue that Donofrio's own submissions do not meet that deferential standard.

{¶ 4} Donofrio also questions the legality of the modification by claiming that the court should not have relied on evidence that was introduced as part of C.T.W.'s objections to the magistrate's decision. This argument is also unpersuasive. Civ.R. 53(D)(4)(d) allows the trial judge to accept additional evidence when resolving objections to a magistrate's decision. Furthermore, there is little in the record to suggest that the trial court actually relied on any additional evidence when it made its final ruling.

{¶ 5} Appellant has not established reversible error in the trial court proceedings, and the judgment is affirmed.

## Background

{¶ 6} Donofrio is the owner and sole proprietor of Market Street Leasing, a leasing consultancy company based in Youngstown, Ohio. C.T.W. is the owner and developer of the Westford Lifestyle Community, a master-planned community located in Canfield, Ohio. After preliminary discussions in April 2004, Donofrio entered into an agreement with C.T.W. to provide consulting services in order to secure commercial tenants for the Westford Commons shopping center, a retail space located within the Westford Lifestyle Community.

**{¶ 7}** Donofrio prepared a written version of the parties' proposed agreement and submitted it to C.T.W. C.T.W. never executed the document. In accordance with their oral negotiations, however, C.T.W. began paying Donofrio in May 2004. Pursuant to their oral agreement, Donofrio received $6,000 per month for his services. Payment continued, uninterrupted, through the following year. In May 2005, C.T.W. did not pay Donofrio for the first time. Though Donofrio continued to work for C.T.W., nonpayment persisted through August of that year.

**{¶ 8}** In September 2005, the parties orally agreed on a new contract, whereby Donofrio would be paid $3,000 per month for his services. Donofrio received payment in ten of the following 14 months. Donofrio's employment was terminated by C.T.W. in October 2006. After his termination, Donofrio sent a letter to C.T.W. listing alleged outstanding payments in the total amount of $30,940. C.T.W. did not respond to the letter.

## Procedural History

**{¶ 9}** Donofrio filed a breach-of-contract suit seeking the unpaid money in the Mahoning County Court of Common Pleas on February 21, 2007. After mediation in the matter failed, a bench trial was held on March 13, 2009, before a magistrate. At the conclusion of the trial, the magistrate asked that parties submit posttrial briefs in lieu of closing arguments. The magistrate emphasized that the posttrial briefs should focus on what each party believed was the appropriate amount of damages.

**{¶ 10}** On May 14, 2009, after posttrial briefs had been received, the magistrate released his decision. As part of the decision, he awarded Donofrio $12,000 for work

performed from May through August 2005, $12,000 for work performed from September 2005 through October 2006, and $4,000 for his efforts on several liquor-license petition drives during the 2006 primary and general election cycles.

{¶ 11} C.T.W. filed timely objections to the magistrate's decision on June 1, 2009. On June 11, 2009, the trial court, apparently unaware of those objections, adopted the magistrate's recommendations and entered judgment against C.T.W. Due to its unresolved objections, C.T.W. filed a motion to vacate the trial court's judgment entry on June 17, 2009. The trial court sustained the motion and vacated its judgment entry. A hearing date was then set to resolve C.T.W.'s objections.

{¶ 12} On July 13, 2009, the trial court again entered judgment against C.T.W., modifying the magistrate's decision in part and adopting it in part. Finding that a subsequent agreement between the parties had resolved the dispute over payment for the period of May through August 2005, the trial court modified the decision by eliminating the magistrate's $12,000 damages award for that period. Affirming the remainder of the decision, the trial court added the remaining damage amounts and entered a $16,000 judgment against C.T.W.

{¶ 13} This appeal followed on August 11, 2009.

{¶ 14} Analysis of Donofrio's assignments of error will be conducted in logical rather than numerical order.

Assignment of Error No. 2

{¶ 15} "The trial court erred in modifying the magistrate's decision based upon an alleged resolution of the dispute, when the objections to magistrate's decision did not raise the issue."

{¶ 16} Appellant contends that the trial judge relied on an argument for eliminating $12,000 from the magistrate's decision that was improper because it was not raised by C.T.W. in its objections to the magistrate's decision. Appellant argues that according to Civ.R. 53(D), a party waives any error that is not specifically raised in objections to a magistrate's decision. A brief review of the process of reviewing a magistrate's decision is in order before we can resolve this assignment of error.

{¶ 17} When a trial court refers a matter to a magistrate, subject to the scope of the trial court's referral, the magistrate prepares a decision on the matter. Civ.R. 53(D)(3)(a). This decision, however, is not a final judgment. A trial court must act on a magistrate's decision in order to give the recommendation the force of law. Civ.R. 53(D)(4)(a) ("A magistrate's decision is not effective unless adopted by the [trial] court").

{¶ 18} Because a magistrate's decision is not effective unless adopted by the trial court, the parties are afforded the opportunity to object to the decision before its potential adoption. The parties have 14 days to file objections once a magistrate's decision is filed. Civ.R. 53(D)(3)(b)(i). If objections are timely filed, a trial court must rule on those objections. Civ.R. 53(D)(4)(d). If no objections are filed, a trial court is permitted to simply adopt the magistrate's decision as part of its judgment. Civ.R. 53(D)(4)(c).

{¶ 19} The filing or failure to file objections, however, does not prevent the trial court from reviewing the magistrate's decision. Civ.R. 53(D)(4)(b) states:

{¶ 20} "Action on magistrate's decision. *Whether or not objections are timely filed,* a court may adopt or reject a magistrate's decision in whole or in part, with or without modification*. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate." (Emphasis added.)

{¶ 21} Even if a trial court refers a matter to a magistrate, it retains the ability to employ its own judgment in the case, according to Civ.R. 53(D)(4)(b). The trial court judge retains jurisdiction and may exercise its own decision-making power in several ways. If objections are filed, the court must rule on those objections. It may then offer its own analysis on the same subjects. *O'Bryan v. K & H Co. Lakeshore Apts.*, 181 Ohio App.3d 741, 2009-Ohio-1417, 910 N.E.2d 1071, at ¶30; see also *Schultz v. Wurdlow*, 10th Dist. No. 09 AP 301, 2010-Ohio-1140, at ¶12. If no objections are filed or if the filed objections do not raise a particular issue, the trial court can simply proceed with its own analysis. Id.

{¶ 22} In its objections to the magistrate's decision, C.T.W., employing the same argument it had advanced at trial, argued that Donofrio had been an at-will employee. The company argued that Donofrio's employment was therefore terminable at any time. According to C.T.W., when Donofrio accepted employment with another corporation in May 2005, his employment with C.T.W. was in effect terminated. C.T.W. concluded that it was improper to award $12,000 to Donofrio for a period of time that Donofrio was not employed. The trial court, in its judgment entry, agreed that C.T.W. did not owe

Donofrio for the May-August 2005 period, but it reached this result on separate grounds. The trial court instead found that Donofrio and C.T.W. had resolved the prior wage dispute in their September 2005 employment agreement.

{¶ 23} Donofrio argues that the trial court's modification was improper because it was based on grounds outside those raised in objection to the magistrate's decision. C.T.W. had objected to the decision because it alleged Donofrio was an at-will employee. The company did not assert that a subsequent agreement had resolved the disputed payments. Donofrio contends that the trial court could modify the magistrate's decision only subject to C.T.W.'s specific objection regarding Donofrio's alleged at-will status.

{¶ 24} Appellant's argument is incorrect. As explained above, Civ.R. 53(D)(4)(b) allows a trial court to modify a magistrate's decision whether or not objections have been raised regarding the basis for the modification. Although Donofrio omits any discussion of Civ.R. 53(D)(4)(b), the rule plainly permits the modification of the magistrate's decision on the basis of the trial court's own review and determination.

{¶ 25} Donofrio also argues that a party's failure to raise an objection to the magistrate's decision at the trial court level waives that party's ability to raise the issue on appeal. Donofrio is correct, but it does not help him in this appeal. If a party does not file an objection to a magistrate's decision regarding a particular issue, he or she is unable to raise as error on appeal the court's adoption of any factual or legal conclusion that was part of the magistrate's decision. Civ.R. 53(D)(3)(b)(iv). In the instant case, if C.T.W. had filed this appeal and was currently trying to argue new objections on appeal,

it would be unable to do so. Here, however, Donofrio is the party appealing the lower court's actions, and C.T.W. is merely responding to appellant's arguments with possible reasons that might explain why the trial court, in its discretion, ruled as it did. C.T.W. cannot have waived assignments of error on appeal because it is not raising any errors. C.T.W. believes that the trial court's judgment is correct and is merely defending that judgment. Therefore, Donofrio's argument has no bearing on the instant appeal.

{¶ 26} For all these reasons, we overrule appellant's second assignment of error.

Assignment of Error No. 1

{¶ 27} "The trial court's decision that the disputed payments for the months of May, June, July, and August 2005 were resolved by agreement of the parties to accept $3,000 per month beginning in September of 2005, was against the manifest weight of the evidence."

{¶ 28} Donofrio argues that the trial court's modification of the magistrate's decision is against the manifest weight of the evidence. On appeal, an appellate court may reverse a trial court's modification only if it finds the modification to be an abuse of discretion. See *Arrow Fin. Servs. v. Kuzniak,* 7th Dist. No. 06 MA 133, 7th Dist. No. 06 MA 133, 2007-Ohio-2191, citing *Wade v. Wade* (1996), 113 Ohio App.3d 414, 419, 680 N.E.2d 1305; see also *Marchel v. Marchel*, 160 Ohio App.3d 240, 2005-Ohio-1499, 826 N.E.2d 887, at ¶7. " ' "[A]buse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

**{¶ 29}** The standard of review for arguments regarding the manifest weight of the evidence is quite deferential. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578. In this inquiry, a trial court's findings are presumed to be correct by an appellate court. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Because we defer to the trial court, appellate decisions finding lower court judgments against the manifest weight of the evidence are rare.

**{¶ 30}** The dispute centers on a service agreement between the parties contained in two oral contracts, the first negotiated in May 2004, and the second formed in September 2005. The elements of a contract, whether oral or written, are well known:

**{¶ 31}** " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶16, quoting *Perlmuter Printing Co. v. Strome, Inc.* (N.D. Ohio 1976), 436 F.Supp. 409, 414.

**{¶ 32}** At trial, C.T.W. argued that Donofrio had terminated the contract in May 2005 by accepting a consulting position with another company. The company argued that the relationship was not reestablished until separate negotiations in September 2005 resulted in the formation of a new oral contract for Donofrio's consulting services.

Donofrio, however, argued that his acceptance of a second job in May did not sever his work with C.T.W. He further argued that because C.T.W. never communicated to him that his services were no longer needed, he continued to work diligently for the company throughout the disputed May–August 2005 period.

{¶ 33} The parties then negotiated a new contract in September 2005. The magistrate found that the parties had intended this new agreement to apply to the period of May through August 2005, as well. In this new oral agreement, Donofrio contracted to provide the same services he had provided under the previous agreement at a reduced rate of $3,000 per month. Therefore, the magistrate recommended compensation for the four unpaid months at the $3,000 per month rate. The trial court, however, determined that the September 2005 agreement had also resolved the prior dispute by simply absolving C.T.W. of any payment obligations resulting from the disputed period. There is no question that a prior contractual obligation may be discharged by a subsequent agreement, whether through novation, abandonment, release, settlement, or simple modification of the original agreement. *Snell v. Salem Ave. Assoc.* (1996), 111 Ohio App.3d 23, 32, 675 N.E.2d 555; *Citizens Fed. Bank, F.S.B. v. Brickler* (1996), 114 Ohio App.3d 401, 407, 683 N.E.2d 358; *Connelly v. U.S. Steel Co.* (1954), 161 Ohio St. 448, 452, 119 N.E.2d 843. In this case, the subsequent agreement was an oral agreement, and establishing the terms of an oral agreement is largely a factual determination made by the trier of fact. *Stanton v. Holler*, 7th Dist. No. 07 BE 29, 2008-Ohio-6208, ¶15, citing *Rutledge v. Hoffman* (1947), 81 Ohio App. 85, 86, 75 N.E.2d 608. The trial court reviewed all the evidence that was before the

magistrate, including the transcript of the magistrate's hearing, and made its own factual findings based on that evidence. In reviewing a magistrate's decision, the trial court is not bound by the findings made by the magistrate unless no transcript is filed of the magistrate's hearing. *Breece v. Breece* (Nov. 5, 1999), 2d Dist. No. 99-CA-1491; *DeSantis v. Soller* (1990), 70 Ohio App.3d 226, 590 N.E.2d 886. A trial court's factual findings are presumed to be correct on appeal. See *Seasons Coal*, 10 Ohio St.3d at 80, 461 N.E.2d 1273. We must only determine whether there is competent, credible evidence to support the trial court's findings. Id.

{¶ 34} The "[t]erms of an oral contract may be determined from 'words, deeds, acts, and silence of the parties.' " *Kostelnik*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶15, quoting *Rutledge*, 81 Ohio App. 85, 75 N.E.2d 608, at paragraph one of the syllabus.

{¶ 35} At trial, Donofrio explained that as part of their original May 2004 agreement, the parties had negotiated a so-called earn-out provision. The earn-out provision entitled C.T.W. to reimbursement for up to one half of Donofrio's salary based on commissions earned under the same agreement. To illustrate, under the May 2004 agreement, Donofrio was slated to earn $6,000 per month for a yearly total of $72,000. According to the agreement, he also stood to earn commissions on any leases secured by C.T.W. as a result of his services. In a complicated arrangement, however, the first $36,000 worth of commissions was essentially waived by Donofrio. C.T.W. was required to pay Donofrio only for commissions in excess of $36,000.

{¶ 36} During the first year of his employment, however, Donofrio did not earn commissions in excess of $36,000. Because C.T.W. was unhappy with his performance, Donofrio appears to have attempted to mollify the company by modifying the earn-out provision. In his early testimony, Donofrio explained that as part of the September 2005 agreement, he applied the unpaid compensation owed him for the May–August 2005 period—pursuant to the new contract's rate, $12,000 in total—to the earn-out amount. "So I—as a way of settling this agreement, I'm including that $12,000 in more or less a payment to him." On cross-examination, he reaffirmed the pledge. "The 12,000, I mentioned to Chuck that I would forgo getting that if he would, you know, just agree to pay me the 3000 * * *."

{¶ 37} Not only did Donofrio testify twice that the September 2005 agreement had resolved the dispute over compensation for the May–August 2005 period, he also offered written evidence that confirmed his admissions. During trial, Donofrio offered into evidence a letter sent by him after his termination to Charles Whitman, president of C.T.W. The letter lists the compensation and fees C.T.W. still owed him as a result of their agreement. In the letter, he specifically states that the balance owed for the May–August 2005 period was $0. The zero sum, he explained, reflected the result of the September 2005 modification of the original earn-out provision.

{¶ 38} On appeal, Donofrio claims that there was no agreement to resolve the unpaid compensation for the May–August 2005 period. This assertion, however, appears to directly conflict with the evidence offered by Donofrio himself at trial. Nothing offered on appeal suggests that Donofrio's own submissions were not competent or

credible. Because competent, credible evidence supports the trial court's determination, there is no reversible error on appeal.

{¶ 39} Accordingly, appellant's first assignment of error is overruled.

Assignment of Error No. 3

{¶ 40} "The trial court erred in relying upon the affidavit of Charles Whitman attached to the objections to find that the parties resolved the four disputed months of payment."

{¶ 41} In support of its objections to the magistrate's decision, C.T.W. attached an affidavit of Charles Whitman, president of C.T.W. Donofrio, relying on Civ.R. 53(E)(4)(b), protests this attachment. Civ.R. 53(E), however, was removed from Civ.R. 53 by amendment in July 2006. The amendment reorganized Section (E) as part of section (D) in the current version of Civ.R. 53. Because Civ.R. 53(D)(4)(d) retains the language of former Civ.R. 53(E)(4)(b), Donofrio's claim can be analyzed under the current rule. Civ.R. 53(D)(4)(d) states:

{¶ 42} "Before so ruling [on objections], the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate."

{¶ 43} Donofrio asserts that this rule requires the court to preclude Whitman's affidavit unless C.T.W. demonstrated that it could not, with reasonable diligence, have produced that evidence at trial. Whitman, as president of the company, testified extensively at trial. Whitman's failure to testify about the issues regarding C.T.W.'s

objections, Donofrio argues, was simply inattentive trial preparation on the part of C.T.W. The information in Whitman's posttrial affidavit, with reasonable diligence, could and should have been presented at trial.

{¶ 44} Donofrio misreads the rule. Civ.R. 53(D)(4)(d) does not require courts to preclude additional evidence. Rather, the rule merely permits courts to preclude additional evidence if they wish to do so. The language of Civ.R. 53(D)(4)(d) is quite clear in this regard: "[T]he court may hear additional evidence but may refuse to do so * * *." In the instant case, the trial court could have refused to accept Whitman's affidavit because of his previous testimony, but Civ.R. 53(D)(4)(d) did not require the court to do so.

{¶ 45} Whether an affidavit is the type of evidence that could be admitted in support of objections to a magistrate's decision and how such an affidavit should be introduced as evidence are completely different questions. The parties do not address these matters in any detail, but we will assume for the sake of argument that there may be some problem with the way the affidavit was submitted. Even with this assumption, there is no reversible error in this case. Donofrio argues that the sole basis for the trial court's modification is contained in Whitman's attached affidavit. If Whitman's affidavit had been disallowed, he argues, the trial court would not possess sufficient grounds for the modification of the magistrate's decision. A review of the affidavit, however, does not support his contention. Whitman's posttrial affidavit offers little, if any, relevant information regarding the compensation for the disputed period. While the trial court determined that the September 2005 agreement resolved the pay issue, Whitman's

affidavit reargues C.T.W.'s oft repeated contention that Donofrio had been an at-will employee. As explained above, the trial court's modification of the magistrate's decision stems from Donofrio's own admissions during the trial proceedings, and not from any theory about at-will employment. Even if Whitman's affidavit was disallowed, there is substantial competent, credible evidence in the record to support the trial court's modification.

**{¶ 46}** Finally, if there was a problem with how the affidavit was submitted as evidence, the trial judge in a bench trial is presumed to know the law, and it is further presumed that a judge will consider only relevant, material and competent evidence in arriving at a judgment. *E. Cleveland v. Odetellah* (1993), 91 Ohio App.3d 787, 794, 633 NE.2d 1159.

**{¶ 47}** For these reasons, Donofrio's third assignment of error is overruled.

Conclusion

**{¶ 48}** Donofrio's three assignments of error are meritless. Despite Donofrio's assertions, Civ.R. 53(D)(4)(b) permits the trial court to modify a magistrate's decision beyond issues raised in the objections. Secondly, the trial court's modification, finding that the disputed payments for the May–August 2005 period were resolved by a subsequent agreement, was not against the manifest weight of the evidence because competent, credible evidence, Donofrio's own testimony, supported the modification. Lastly, although Civ.R. 53(D)(4)(d) would have allowed the trial court to reject additional evidence, such as Charles Whitman's affidavit, the rule does not require the trial court to do so. For all the aforementioned reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

VUKOVICH, P.J., and DEGENARO, J., concur.