[Cite as *Slepski v. Borton*, 2024-Ohio-3381.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

BRITTNIE L. SLEPSKI,

Plaintiff-Appellee,

v.

CHARLES R. BORTON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0011**

---

Juvenile Appeal from the
Court of Common Pleas, Juvenile Division
of Mahoning County, Ohio
Case Nos. 2008 JH 00819 JUV, 2016 JH 01553JUV

**BEFORE:**
Carol Ann Robb, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

Brittnie L. Slepski, *pro se* and

*Atty. James E. Lanzo* for Defendant-Appellant.

Dated:  August 29, 2024

**Robb, P.J.**

{¶1}   Appellant, Charles L. Borton (Father), appeals the December 21, 2023 judgment issued by the juvenile court.  Father argues the trial court erred by modifying the magistrate's decision and increasing his child support obligation.  He also contends the court erred by failing to set forth an updated timeline for him to purge the court's decision finding him in contempt.  For the following reasons, we affirm.

Statement of the Facts and Case

{¶2}   Father and Appellee, Brittnie Slepski (Mother), have two children together and were never married.  In January of 2022, Father filed a complaint for custody, motion to decrease his child support obligation, and motion to appoint a guardian ad litem.

{¶3}   In February of 2022, Mother filed her opposition to Father's complaint for custody.  Mother obtained a domestic violence civil protective order in a separate action against Father's wife based on allegations that his wife threatened to harm the children.  Mother also moved to claim the children for tax purposes and to increase Father's child support obligation.  She also asked the court to hold Father in contempt for his support arrearage.

{¶4}   A guardian ad litem was appointed, and Mother moved for an in camera interview of the children, which the court conducted in June of 2022.  Father was granted interim visitation with the children pending the disposition of the case.

{¶5}   Mother requested discovery from Father and sought his financial records and a copy of his financial and property affidavits.  Father did not respond or comply with her request for production of documents.  (February 16, 2022 Request for Production of Documents.)

{¶6}   The case was set for trial before the magistrate.  The court ordered the parties to appear on the date of trial with copies of their tax returns, including W2s and 1099s, their last three paystubs, and any other financial documentation to be considered.  According to the magistrate's October 27, 2022 decision, Father withdrew his pending motions.  Mother elected to proceed on her contempt motion based on the support arrearage and her motion to increase child support based on imputation of income.

**{¶7}** Father did not comply with Mother's discovery requests, and she was unable to secure any documents evidencing his income.

**{¶8}** The October 27, 2022 magistrate's decision found in part that Father was voluntarily underemployed and he has an $18,138.32 child support arrearage as of October 16, 2022. The magistrate imputed him with a minimum wage annual income of $19,344.

**{¶9}** The magistrate also found that part of Father's arrearage was already the basis for Father's criminal nonsupport felony conviction, and as such, it could not be the basis for a contempt finding. However, an additional $762.29 of child support arrearage accrued thereafter that could be the basis of a contempt finding. The magistrate granted Mother's motion to show cause and motion to increase child support. (October 27, 2022 Magistrate's Decision.)

**{¶10}** Before the parties filed objections to the magistrate's decision, the trial court adopted the magistrate's October 27, 2022 decision in full. (October 28, 2022 Judgment.)

**{¶11}** Mother subsequently filed her objection contending the court failed to impute a proper income to Father in light of his testimony that he has more than $8,000 per month in expenses, which would require an income in excess of $100,000. Mother urged the court to modify or vacate the magistrate's decision and grant an appropriate amount of support based on the testimony presented. (November 3, 2024 Objection.)

**{¶12}** After Mother's objection was filed, the court ordered Father to file his 2019, 2020, and 2021 tax returns on or before January 25, 2023. (January 18, 2023 Judgment.) He did not comply, and the trial court again ordered him to file his tax returns. (February 21, 2023 Judgment.)

**{¶13}** On March 13, 2023, the magistrate issued an order regarding Father's contempt. It states that pursuant to the court's prior judgment, Father was found in contempt and sentenced to ten days in jail. His sentence was held in abeyance pending an opportunity to purge: "[i]n addition to complying with this current Order for child support and arrearage payments, Father shall make a lump sum arrearage payment of $500 on or before the [May 24, 2023] Purge Hearing." (March 13, 2023 Magistrate's Order.)

**{¶14}** Thereafter, on April 4, 2023, the magistrate issued a show cause order as to why Father should not also be held in contempt for his failure to pay the $1,252.50

guardian ad litem fee. It set the matter for a June 14, 2023 hearing. Father was summoned and ordered to appear at the hearing. (April 4, 2023 Magistrate's Order.)

**{¶15}** The court issued a judgment May 23, 2023 regarding its March 7, 2023 hearing. It noted that Father failed to appear at the hearing and failed to produce his tax returns and insurance coverage information as ordered. It ordered him to show cause as to why he should not be held in contempt and appear at a June 28, 2023 show cause hearing. (May 23, 2023 Judgment.)

**{¶16}** Father did not appear at the May 24, 2023 contempt hearing before the magistrate. Mother testified that Father was out of the state at the time of the hearing. Mother also confirmed she had not received the court ordered $500 payment toward his child support arrearage and he was still behind on his payments. Mother said Father was paying his support obligation every other month in an effort to avoid a license suspension. (May 24, 2023 Tr.)

**{¶17}** The magistrate issued a separate contempt decision after the May 24, 2023 purge hearing. The magistrate noted Father failed to appear; found that Father had failed to pay the $500 lump sum arrearage as ordered; and held Father in contempt for his failure to comply with the existing child support order. It sentenced him to ten days in jail and found Father failed to purge the October 27, 2023 contempt finding, despite the opportunity. A warrant was issued for his arrest, and he was ordered to commence his sentence immediately. (May 24, 2023 Magistrate's Decision.)

**{¶18}** The court adopted the magistrate's decision. (May 31, 2023 Judgment.)

**{¶19}** Father filed two objections on June 12, 2023. His first objection claimed he did not receive notice of the May 24, 2023 hearing. His second objection contends: "[t]his matter had previously been adjudicated, divesting the court of jurisdiction." (June 12, 2012 Objections.) The magistrate canceled the capias issued for Father pending resolution of his objections. (June 14, 2023 Magistrate's Order.)

**{¶20}** The July 18, 2023 magistrate's decision reflects that Father's counsel and the GAL reached an agreement regarding the payment of outstanding GAL fees. The trial court adopted the magistrate's decision. (July 20, 2023 Judgment.) Thus, this show cause order did not result in Father being held in contempt.

{¶21} On October 24, 2023, the court ordered the parties to submit briefs outlining their objections and canceled the objection hearing.

{¶22} Mother's brief urged the trial court to increase Father's imputed income in light of his testimony detailing monthly expenses in excess of $8,000. She urged the court to consider his standard of living and expenses as evidence that he must earn in excess of $100,000 per year. (November 3, 2023 Mother's Brief.)

{¶23} Father's brief contends the court changed the date of the purge hearing, and in the meantime, Father's first attorney was permitted to withdraw as counsel of record. Thus, Father contends he inadvertently missed the purge hearing and was denied the opportunity to be heard. (November 6, 2023 Father's Brief.)

{¶24} The trial court subsequently issued its December 21, 2023 judgment on the parties' objections. On the first page of the judgment, the court acknowledges each of the parties' objections, but does not explicitly rule on them. On the last page of the judgment, the court states in part:

> The Court adopts the Magistrate's Decision filed October 27, 2022 and approves same . . . The Court finds no error of law nor other defect on the face of the Magistrate's Decision . . . The Magistrate did not abuse her discretion or commit an error of law. Therefore, the Magistrate's Decision is affirmed and Mother's objections are denied.

(December 21, 2023 Judgment.)

{¶25} Notwithstanding the denial of Mother's objection, the court nevertheless modified the magistrate's decision and increased Father's imputed income. The judgment states in part Father "is imputed to earn $83,200 annually, based upon his testimony and consideration of [his] credibility." The court also attached Exhibit A to its judgment, the child support worksheet "reflecting the presumptively correct computation of support of $1,088.87 per month . . . ." The judgment does not explicitly rule on Father's objection. (December 21, 2023 Judgment.)

{¶26} Father raises three assigned errors.

<u>First & Second Assignments of Error: Father's Imputed Income</u>

{¶27} Father's first assignment contends:

"The trial court erred by both adopting the Magistrate's Decision in total and denying the Plaintiff Appellee Brittnie Slepski's objections and at the same time modifying the Magistrate's decision regarding child support."

**{¶28}** Father argues the court erred by stating it was adopting the magistrate's decision in full and not finding error, but nevertheless increasing the amount of his imputed income and child support obligation. Father claims that absent a finding of error, the trial court lacked the authority to alter the magistrate's decision. We disagree.

**{¶29}** Under Juv.R. 40 and Civ.R. 53, when ruling on objections to a magistrate's decision, the trial court must conduct an independent review of the case and has the "ultimate authority and responsibility over the [magistrate's] findings and rulings." *Hartt v. Munobe,* 67 Ohio St.3d 3, 5 (1993). "An appellate court reviewing a lower court's judgment indulges in a presumption of regularity of the proceedings below." *Id.* at 7.

**{¶30}** Juv.R. 40(D)(4) states in part:

(a) Action of Court Required. A magistrate's decision is not effective unless adopted by the court.

(b) Action on Magistrate's Decision. Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, *with or without modification*. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate.

. . .

(e) Entry of Judgment or Interim Order by Court. A court that adopts, rejects, or *modifies* a magistrate's decision shall also enter a judgment or interim order.

(d) Action on Objections. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.

(Emphasis added.)

**{¶31}** According to Juv.R.(D)(4)(b), even if a trial court refers a matter to a magistrate, it retains the ability to employ its own judgment in the case. *Donofrio v.*

Case No. 24 MA 0011

*Whitman*, 2010-Ohio-6406, ¶ 21 (7th Dist.) (analyzing Civ.R. 53(D)(4)(b)).  The trial court judge retains jurisdiction and may exercise its own decision-making power in several ways.  *Id.*  If objections are filed, the court must rule on those objections.  It may then offer its own analysis on the subject.  If no objections are filed or if the objections asserted do not raise a particular issue, the trial court can simply proceed with its own analysis.  *Id.*

**{¶32}**  Juv.R.(D)(4)(b) "plainly permits the modification of the magistrate's decision on the basis of the trial court's own review and determination."  *Id.* at ¶ 24 (analyzing Civ.R. 53(D)(4)(b)).

**{¶33}**  Here, Father alleges the trial court's December 21, 2023 judgment is internally conflicted since it seemingly grants Mother's objection while stating it lacks merit.  The judgment explicitly states in paragraph 12 on the last page that the magistrate did not err.  Further, the court states that Mother's objection is denied.

**{¶34}**  Notwithstanding, on page one of the decision, the court significantly increases Father's imputed income and support obligation from the magistrate's decision.  The magistrate imputed Father's income at $19,344 per year.  (October 28, 2022 Judgment.)  Whereas, after Mother's objection, the trial court increased his imputed income more than four times to $83,200.  The court also attached an updated child support computation worksheet as exhibit A, reflecting Father's $83,200 imputed income in column 6 labeled other/potential income.  (December 21, 2023 Judgment.)

**{¶35}**  The court's judgment states, in part, on page one:

1. Plaintiff is currently employed and does receive some benefits.  Plaintiff is self-employed.  Plaintiff is currently earning $18,000 annually.

2. Defendant is imputed to earn $83,200 annually, based on his testimony and consideration of Defendant's credibility.

3. The Plaintiff and the Defendant did not submit financial affidavits; however, the Court considered their testimony concerning their monthly living expenses.  In computing the Defendant's child support obligation under the Ohio Child Support Guidelines, consideration was given to any potential deductions to be awarded to either Party

from their respective gross incomes. In this regard, the Court finds that none are applicable.

4. The Worksheet reflecting the presumptively correct computation of support of $1,088.87 per month is attached as Exhibit "A."

(December 21, 2023 Judgment.)

**{¶36}** Neither party filed their 2021 taxes at the time of trial, and neither party's income was documented except through testimony.

**{¶37}** Father testified he earns $350 per week on average. According to his testimony, Father's monthly personal expenses total $5,777 and his business expense are $3,060 per month. According to Mother's counsel's calculations, Fathers expenses were more than $8,000 per month.

**{¶38}** Father testified on cross-examination that he has the following monthly expenses: $1,100 home rental; $250 electric; $400 gas; $150 cellular phone; $22 trash; $90 cable; $45 internet; $50 cleaning supplies; $160 lawn service; $750 food; $150 restaurants; $570 truck payment; $500 gasoline; $200 car maintenance; $100 beard grooming; $20 children; $100 life insurance; $120 car insurance; $50 child support for another unrelated child; $100 on his wife and her daughter; $200 charitable contributions; $125 toward vacations; $150 pet expenses; $75 for gifts; and $300 for medical marijuana. (Trial Tr. 9-26.) These expenses total $5,777 per month or $69,324 per year ($5,777 times 12).

**{¶39}** Father runs his own car detailing business. He said the base rate he charges is $200 per vehicle for detailing and his per vehicle charges range from $400 to $1,200 per car. He works on about four cars a week. He also said his detailing business is seasonal, and he has no other income. Father also testified that he has arthritis and cannot work too much as a result. He said he has "torn stuff" in his knee and is planning to have surgery on his neck. He denied being disabled.

**{¶40}** Father testified that his business expenses include: $1,100 building rental; $1,500 cleaning supplies; $400 gas; and $60 insurance. These expenses total $3,060 per month or $36,720 per year ($3,060 times 12).

**{¶41}** Mother's objection argued Father should be imputed with an annual income of more than $100,000. The trial court disagreed. It found her objection lacked merit and

the trial court did not err. Notwithstanding, the court increased Father's imputed income to $83,200 annually. It is not evident how the trial court arrived at this number as his annual income, but it is $24,764 less than the amount Mother was urging the court to impute.

**{¶42}** In light of the court's abundantly clear statement that Mother's objection was denied and its decision to increase his imputed income to an amount less than the amount argued by Mother, it is reasonable to conclude the trial court simply disagreed with the magistrate's decision and modified it accordingly consistent with Juv.R.(D)(4)(b).

**{¶43}** Thus, we find Father's first assigned error lacks merit.

**{¶44}** Father's second assignment contends:

"The trial court erred by improperly calculating the child support obligation of the Defendant Appellant Charles Borton by finding he was self-employed and treating his imputed income from self-employment as other potential income."

**{¶45}** Father does not challenge the fact that the court imputed income, and he does not dispute the amount of imputed income. Rather, he claims the court erred by treating and listing the imputed income as "other potential income" on the child support computation worksheet, as opposed to income from self-employment. He alleges the statutes and guidelines were not followed.

**{¶46}** Because his testimony was that he was self-employed, he contends the court was required to deduct his ordinary and necessary business expenses from his gross receipts. And since the court listed Father's imputed income under "other potential income" on the child support worksheet, his self-employment income was not reduced by the ordinary and necessary expenses incurred in generating the gross receipts. As a result, Father claims his overstated income resulted in an overstated support obligation.

**{¶47}** "[T]he amount of potential income to be imputed to a child support obligor who is found to be voluntarily unemployed or voluntarily underemployed is a matter to be determined by the trial court" upon applying the applicable statutes. *Rock v. Cabral*, 67 Ohio St.3d 108, 112 (1993). We review the trial court's determination for an abuse of discretion, and thus must affirm absent a finding that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Id.* citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶48}** To calculate the amount of child support owed, the domestic-relations court must determine the annual income of each parent. R.C. 3119.021(A). "Income" is defined as:

> (a) For a parent who is employed to full capacity, the gross income of the parent;
>
> (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.

R.C. 3119.01(C)(9).

**{¶49}** "Potential income" applies to "a parent who the court pursuant to a court support order . . . determines is voluntarily unemployed or voluntarily underemployed." R.C. 3119.01(C)(17).

**{¶50}** To impute "potential income," a trial court must first conclude a parent is voluntarily unemployed or underemployed. Second, the court must determine what that parent would have earned had he or she been fully employed based on the criteria in R.C. 3119.01(C)(17)(a)(i) through (x)(i). *Ayers v. Ayers*, 2024-Ohio-1833, ¶ 14.

**{¶51}** A parent's "potential income" may include:

> (a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:
>
> (i) The parent's prior employment experience;
>
> (ii) The parent's education;
>
> (iii) The parent's physical and mental disabilities, if any;
>
> (iv) The availability of employment in the geographic area in which the parent resides;
>
> (v) The prevailing wage and salary levels in the geographic area in which the parent resides;
>
> (vi) The parent's special skills and training;
>
> (vii) Whether there is evidence that the parent has the ability to earn the imputed income;
>
> (viii) The age and special needs of the child for whom child support is being calculated under this section;
>
> (ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

R.C. 3119.01(C)(17)(a)(i) through (xi).

{¶52} R.C. 3119.01(a)(20) defines "self-generated income" for child support purposes. It states:

"Self-generated income" means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.

{¶53} As argued, R.C. 3119.01(a)(20) requires the deduction of ordinary and necessary business expenses. However, there is nothing evidencing the court did not do this upon formulating Father's imputed income. The trial court's decision does not state whether the imputed income amount is self-employment income. And if it were calculated as self-employment income, the judgment likewise does not state whether the court reduced the gross amount by the ordinary and necessary business expenses required to generate the self-employment income.

[T]he imposition and amount of potential income to be imputed are matters for the trial court to determine based upon the facts and circumstances of each case. . . . "To the extent that the ability to earn more than current income is predicated on an assessment of a party's motivations or other factual determinations, the trial court is, of course, in the best position to evaluate the evidence and the credibility of the witnesses."

*Gavorcik v. Gavorcik*, 2005-Ohio-6443, ¶ 43 (7th Dist.), quoting *Bertoldi v. Bertoldi*, 1997 WL 665714 (9th Dist. Oct. 8, 1997).

{¶54} While the statute sets forth factors to be considered by the trial court, if the court does not specifically address each factor in its order, absent evidence to the

contrary, a reviewing court presumes each factor was considered. *Carroll v. Carroll,* 2004-Ohio-6710, ¶ 28 (5th Dist.) (addressing parties' standard of living factors).

**{¶55}** Moreover, the court commented on Father's credibility before increasing the imputed income. The court evidently did not believe his testimony that he earns about $350 week with monthly business expense in excess of $3,600. He did not produce receipts, tax returns, or other evidence bolstering his testimony. Thus, the court was free to disregard his testimony in part or in full.

**{¶56}** As stated, Mother urged the trial court to impute an annual income in the amount of $107,964 based on Father's testimony establishing his annual expenses in excess of $100,000 per year. The court imputed a lesser amount—$24,764 less than the amount that Mother urged the court to impute.

**{¶57}** Furthermore, Civ.R. 52 states in part:

When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law.

**{¶58}** Because Father did not request findings of fact and conclusions of law under Civ.R. 52, the trial court was not required to include specific findings of fact to support its imputed income determination. *Yant v. Roebuck*, 2017-Ohio-2591, ¶ 20 (3rd Dist.) (findings of fact for imputed income are not required unless requested); *see also Matter of Z.N.T.*, 2019-Ohio-915, ¶ 19 (12th Dist.) (applying Civ.R. 52 in juvenile proceeding).

**{¶59}** Although this court cannot ascertain how the court arrived at the amount of imputed annual income it imposed, we cannot find the court's attitude was unreasonable or arbitrary based on this record. Accordingly, we decline to find an abuse of discretion.

Third Assignment of Error: Contempt

**{¶60}** Father's final assigned error contends:

"The Trial Court erred by failing to issue a new timeline for compliance with the purge conditions imposed by the magistrate after 'adopting' the Magistrate's October 27, 2022 Decision."

**{¶61}** This assignment deals with the court's order finding him in contempt. First, Father claims the court failed to rule on his objections. Second, Father claims the Mother's objection automatically stayed the contempt issues pursuant to Juv.R. 40(D)(4)(e)(i), and as such, the court should not have held the May 2023 purge hearing.

**{¶62}** As Father contends, Mother filed her objection on November 3, 2022 from the magistrate's October 27, 2022 decision, which also found Father in contempt of court for his additional child support arrearage. Mother's objection was not addressed until the trial court's December 21, 2023 judgment.

**{¶63}** Juv.R. 40(D)(4)(e)(i) states:

(i) Judgment. The court may enter a judgment either during the fourteen days permitted by Juv.R. 40(D)(3)(b)(i) for the filing of objections to a magistrate's decision or after the fourteen days have expired. If the court enters a judgment during the fourteen days permitted by Juv.R. 40(D)(3)(b)(i) for the filing of objections, the timely filing of objections to the magistrate's decision shall operate as an automatic stay of execution of the judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered.

**{¶64}** Thus, as Father contends, Mother's objection should have operated as a stay of execution of the judgment until the court disposed of it. Notwithstanding, the court proceeded with the purge hearing, and Father failed to appear and comply. (May 24, 2023 Tr.)

**{¶65}** Regardless of the foregoing, however, Father did not timely raise this issue to the trial court, and as such, has not preserved the issue for appeal except for plain error.

**{¶66}** Juv.R. 40(D)(3)(b), governing objections to magistrate's decisions, states in part:

(i) Time for Filing. A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the

court has adopted the decision during that fourteen-day period as permitted by Juv.R. 40(D)(4)(e)(i).

. . .

(iv) Waiver of Right to Assign Adoption by Court as Error on Appeal. Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

**{¶67}** The magistrate issued her contempt decision after the May 24, 2023 purge hearing.  The magistrate noted Father failed to appear; found that Father had failed to pay the $500 lump sum arrearage as ordered; and held Father in contempt for his failure to comply with the existing child support order.  It sentenced him to ten days in jail and found that Father failed to purge the October 27, 2023 contempt finding, despite the opportunity.  A warrant was issued for his arrest, and he was ordered to commence his sentence immediately.  (May 24, 2023 Magistrate's Decision.)

**{¶68}** The court adopted the magistrate's decision. (May 31, 2023 Judgment.)  As stated, Father filed two objections on June 12, 2023—19 days after the magistrate's decision and five days late.

**{¶69}** "[A] court may consider untimely objections but only "*so long as the trial court has not entered a final judgment.*"  (Emphasis sic.)  *Dejak v. Dejak*, 2019-Ohio-3236, ¶ 15 (11th Dist.), quoting *Learning Tree Academy, Ltd. v. Holeyfield,* 2014-Ohio-2006, ¶15 (12th Dist.).  A trial court may consider untimely objections if it has not yet entered a final judgment or if the court grants the party leave under Civ.R. 6(B).  *Hale v. Hale*, 2006-Ohio-5164, ¶ 32 (11th Dist.).

Once a trial court makes a final judgment on the matter, the civil rules permit a party to seek relief from that final judgment only through a motion notwithstanding the verdict (Civ.R.50[B]), a motion for a new trial (Civ.R.59), or a motion for relief from judgment (Civ.R.60[B] ). *Pitts v. Ohio Dept. of Transp.,* 67 Ohio St.2d 378, 379-380, 423 N.E.2d 1105 (1981).  Otherwise,

> a trial court lacks jurisdiction to rule upon motions that request relief from a
> final judgment already rendered.

(Citations omitted.)  *Learning Tree Academy, Ltd., supra*, ¶ 16 (12th Dist.).  Accord *In re J.A.M.,* 2011-Ohio-668, ¶ 15 (12th Dist.) (a trial court's jurisdiction terminates when it enters a final judgment and lacks jurisdiction to consider untimely objections to a magistrate's decision).

**{¶70}** Here, Father did not file a motion for relief from judgment or other post-judgment motions.  Father likewise did not timely raise the trial court's alleged inability to proceed and address the contempt issues due to the automatic stay flowing from Mother's objection.  Once the trial court adopted the magistrate's decision as its own and the 14-day period to object expired, the trial court was without the authority to consider his arguments.  *Id.*

**{¶71}** Regardless of whether the October 27, 2022 magistrate's decision was stayed as a result of Mother's objection, Father's failure to timely object did not preserve these issues except for plain error.

**{¶72}** Plain error is applicable in civil cases only in the extremely rare cases. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123 (1997).

> The plain error doctrine is "sharply limited to the *extremely rare* case involving *exceptional* circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself. . . . [Plain error should be found ] "only in circumstances where the error has seriously affected the basic fairness, integrity, or public reputation of the judicial process."  *Yungwirth v. McAvoy* (1972), 32 Ohio St.2d 285, 288 . . . The plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allow litigation of issues which could easily have been raised and determined in the initial trial.

(Emphasis sic.)  *Id.*

**{¶73}** Father does not contend plain error occurred, and we decline to find the plain error doctrine applicable in this case.

**{¶74}** Moreover, we conclude the trial court impliedly overruled Father's objections. *Portofe v. Portofe*, 2003-Ohio-3469, ¶ 16 (7th Dist.) ("where the court fails to rule on an objection or motion, it will be presumed that the court overruled the objection or motion"). Accordingly, Father's third assignment of error lacks merit.

<u>Conclusion</u>

**{¶75}** For the foregoing reasons, each of Father's assignments of error lack merit. The trial court's decision is affirmed.

Hanni, J., concurs.

Dickey, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**